CHARLES SHIVERICK & COMPANY V. R. J. GUNNING COMPANY.

| 58 | 29 |
| s59 | 74 |

FILED FEBRUARY 23, 1899.   No. 8701

1. **Directing Verdict.** Where only one conclusion can be drawn from the evidence, the court may direct a verdict consistent therewith.

2. **Party Walls: STATUS OF OWNERS.** Owners of a party wall, built at joint expense, are not tenants in common, but each owns in severalty the part thereof situated on his own land, with an easement of support from the other part.

3. **Trespass.** Where one enters upon the premises of another and obliterates a display advertisement, he is liable to the owner for the costs and expenses of replacing or restoring the sign to its former condition.

4. **Instructions: REVIEW.** It is not error to refuse an instruction which, in its theory, has no support in the proof adduced.

5. ——: ——. A party cannot predicate error upon an instruction which is in harmony with one which was given at his own request.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J. *Affirmed.*

*Hall & McCulloch*, for plaintiffs in error

References as to the proper use of party walls: *Milne's Appeal*, 81 Pa. St. 54; *Vollmer's Appeal*, 61 Pa. St. 118; *Sullivan v. Graffort*, 35 Ia. 531; *Dauenhauer v. Devine*, 51

Tex. 480; *Gibson v. Holden*, 115 Ill. 199; *Hendricks v. Stark*, 37 N. Y. 106; *Andrea v. Haseltine*, 58 Wis. 395.

*N. H. Tunnicliff* and *Elmer E. Thomas, contra.*

References as to the law of party walls: *Matts v. Hawkins*, 5 Tau. [Eng.] 20; *Hoffman v. Kuhn*, 57 Miss. 746, 750; *Andrea v. Haseltine*, 58 Wis. 395; *Wolfe v. Frost*, 4 Sandf. Ch. [N. Y.] 72*; *Partridge v. Gilbert*, 15 N. Y. 601; *Burton v. Moffitt*, 3 Ore. 29; *Bloch v. Isham*, 92 Am. Dec. [Ind.] 287.

References as to the law of joint tenancy: *Phelps v. Jepson*, 1 Root [Conn.] 48; *City of Chicago v. Sheldon*, 9 Wall. [U. S.] 50; *Graessle v. Carpenter*, 70 Ia. 166; *Vermilya v. Chicago, M. & S. P. R. Co.*, 66 Ia. 606; *Sabine & E. T. R. Co. v. Joachimi*, 58 Tex. 456.

NORVAL, J.

The R. J. Gunning Company, plaintiff below, is a corporation organized under the laws of the state of Illinois, with its principal office at Chicago, and engaged in the business of display advertising, leasing walls in different cities for that purpose. The defendants below, Charles Shiverick & Co., are a partnership engaged in the furniture and carpet business in the city of Omaha, occupying as lessees the four-story building situate on the west one-third of lot 8, in block 103, in said city. On and prior to August 15, 1882, one John McCreary was the owner of the said west one-third of lot 8, and the east two-thirds of said lot was owned by one Samuel E. Rogers. McCreary was about to erect a building on his portion of said lot, so on said date he and Rogers entered into a party-wall contract, whereby it was agreed that they should unite in building a party wall on the line dividing the said premises; one-half of the wall to stand upon the property of each and one-half of the costs of construction to be paid by each. The wall was erected during said year and the cost thereof was paid according to contract, and McCreary at the same time erected a four-story brick building on his

portion of the lot, using the said party wall as the eastern wall of his building. No building has been erected on the east two-thirds of said lot 8. In November, 1890, Mc-Creary leased to the R. J. Gunning Company the east or outside surface of said party wall to be used for adver-tising purposes. Immediately thereafter S. G. Higgins, the then owner of the said east two-thirds of said lot 8, notified the agent of the R. J. Gunning Company that he was the owner of the east half of said wall, and on Mr. McCreary's attention being called to the matter he paid back the money which he had received as rent and the lease was surrendered to him. Thereupon the R. J. Gunning Company entered into a lease with Higgins for the east half of said party wall for the term of two years. On May 22, 1893, said company entered into a new lease for said wall with the then owner of said east two-thirds of lot 8, for two years for advertising purposes, and on October 17, 1894, the lease was renewed for another year. In 1890, in pursuance of the lease with Higgins, the R. J. Gunning Company caused to be painted upon the east surface of said party wall a Durham tobacco sign, 108½ feet long and 50 feet high, advertising Blackwell's Durham tobacco. The lettering on the sign was "Smoke Blackwell's Genuine Durham Tobacco." Besides, there was a picture of a large Durham bull, occupying a space of 18 feet by 35 feet. This sign remained on the east sur-face of the party wall until July, 1893, or a month after Charles Shiverick & Co. entered the building as tenants, when the R. J. Gunning Company brightened up the sign with a fresh coat of paint. Charles Shiverick & Co. at the time protested against the revival of the sign and as-serted the right to put their sign on the building, and requested the R. J. Gunning Company to paint the same, which the latter declined to do. Plaintiff was thereupon notified it had no right to use said party wall for display advertising. In October of the same year Charles Shive-rick & Co. obliterated said Durham tobacco sign and painted their own sign upon said wall. In March, 1894,

the R. J. Gunning Company effaced this last sign and replaced upon the wall the Durham tobacco sign, which last sign was painted out by Charles Shiverick & Co. and their own sign was again placed upon the wall. The following August the R. J. Gunning Company again replaced the Durham tobacco sign on the wall and during the night following it was painted out by Charles Shiverick & Co. This suit was brought by the R. J. Gunning Company to recover damages alleged to have been sustained by reason of the painting out of said sign by Charles Shiverick & Co. Plaintiff secured a verdict in the sum of $600, and to obtain a reversal of the judgment entered thereon the defendants have prosecuted this error proceeding.

The principal question presented for our consideration is raised by the giving of the first paragraph of the instructions, which was to the effect that the plaintiff had the right, under its lease, to paint and maintain the sign in question upon the east f ʒ: ʾace of said wall, and that the defendants are liable for the damages sustained by the obliteration of such sign. This instruction substantially directed a verdict for the plaintiff below, which, in our view, was entirely proper. There was no conflict in the evidence adduced, and but one inference could be drawn therefrom. The question was of law alone for the court, and therefore it was proper to direct a verdict for the party entitled thereto under the evidence, and the law. (*Woolsey v. Chicago, B. & Q. R. Co.*, 39 Neb. 798; *Slayton v. Fremont, E. & M. V. R. Co.*, 40 Neb. 840; *Knapp v. Jones*, 50 Neb. 490.) The wall in question was built by two adjoining lot owners, under a written contract so that one-half of the wall, divided longitudinally, rested on the one's lot and the other half on the other's lot. Each party to the agreement paid one-half of the cost of constructing the wall, and each was the owner in severalty of the portion thereof that stood upon his land, subject to the easement or right in the other to have it support the building which he might erect and attach to or

connect with the wall. The fact that the agreement un-
der which the wall was erected speaks "of the joint own-
ership of said wall by said parties in equal proportions"
does not take the case out of the rule governing party
walls. A consideration of the entire contract, in connec-
tion with the practical interpretation placed thereon by
the parties thereto, discloses that the wall was, never-
theless, a party wall, not owned either jointly or as ten-
ants in common by the proprietors of the soil, but each
possessed the portion of the wall which stood on his lot,
subject to the cross-easement of support in favor of the
owner of the other lot and part of the wall. (*Sullivan v.
Graffort;* 35 Ia. 531; *Dauenhauer v. Devine,* 51 Tex. 480;
*Burton v. Moffitt,* 3 Ore. 29; *Bloch v. Isham,* 28 Ind. 37;
*Sherred v. Cisco,* 4 Sand. [N. Y.] 480.)

"Land covered by a party wall remains the several
property of the owner of each half, but the title of each
owner is qualified by the easement to which the other
is entitled of supporting his building by means of the half
of the wall belonging to his neighbor. The only proper
easement attached to a party wall is the easement of
support." It does not include the right to go upon the
land of the other. The easement of support is all that
either can convey. (*Ingals v. Plamondon,* 75 Ill. 118; *Gib-
son v. Holden,* 115 Ill. 199.)

In *Hoffman v. Kuhn,* 57 Miss. 746, Chalmer, J., said:
"The owners of adjoining buildings connected by a party
wall, resting partly upon the soil of each, are neither joint
owners nor tenants in common of the wall. Each is pos-
sessed in severalty of his own soil up to the dividing line,
and of that portion of the wall which rests upon it; but
the soil of each, with the wall belonging to him, is bur-
dened with an easement or servitude in favor of the other,
to the end that it may afford a support to the wall and
building of such other. Each, therefore, is bound to per-
mit his portion of the wall to stand, and to do no act to
impair or endanger the strength of his neighbor's por-
tion, so long as the object for which it was erected, to-wit,

7

the common support of the two buildings, can be subserved; and each will consequently be liable to the other for any damage sustained by a disregard of this obligation. But the obligation ceases with the purpose for which it was assumed, namely, the support of the houses of which the wall forms a part."

In *Andrea v. Haseltine*, 58 Wis. 395, Lyon, J., in speaking of party walls, observed: "It seems to be the settled law that the owners of a party wall standing in part upon the lot of each are not tenants in common of the wall, but that each owns in severalty so much thereof as stands upon his lot, subject to the easement of the other owner for its support, and the equal use thereof as an exterior wall of his building. Such being the tenure by which the wall is held and owned, it seems logically to follow that either owner may, at least upon his own land, do anything with the wall, or make any use of it, which does not interfere with or impair the enjoyment of such easement by the other owner."

Applying the principle governing the foregoing decisions to the case at bar, it is very plain that the defendants below had no right to go upon the lot of the adjoining owner and obliterate the sign painted by plaintiff on the east surface of said party wall. The instruction criticised was pertinent and proper.

Instructions were tendered by the defendants, which were refused, announcing the doctrine that the owners of the lots on which the wall was erected were joint owners of the wall, and directing the jury to find a verdict for the defendants. From what we have already said in this opinion it follows that said requests to charge were properly refused.

It is urged in the brief that the court erred in not giving instruction No. 3 asked by the defendants "found on page 177½." No instruction tendered by defendants appears on said page of the record, but such page contains instructions requested by the plaintiff, which were refused by the court. On page 177¾ there is recorded de-

fendants' request No. 3, which is probably the instruction sought to be criticised in the brief, which is in the language following: "The jury are instructed that if they believe from the evidence that the character of the painting placed upon the wall in question was such as to be injurious and detrimental to the other person having an interest in said wall, so as to injure said building or its use for any purpose for which it might properly be used, you will find for the defendants." This request is based upon the theory that the sign in question was detrimental to the business of the defendants. No evidence is found in the record on which to base this instruction. It is true evidence was offered, and rejected, to establish that defendants' customers were mainly ladies of the city of Omaha and the advertisement greatly impaired and injured their trade. The ruling upon this point was not assigned for error in the petition in error. The proofs show that the sign contained a perfect picture or likeness of a Durham or shorthorn bull, but we cannot take judicial notice from this fact that the picture was so immodest or indecent as to prevent the most fastidious or refined ladies visiting defendants' store. There was no error in refusing to charge the jury as requested by said instruction.

Complaint is made of the rule of damages laid down in the following portion of the charge of the court: "The plaintiff is entitled to recover as its measure of damages in this action such amount as will compensate it for the loss it sustained in consequence of defendants' wrongful act in erasing and marking out the sign in question, the cost of replacing said sign, including railroad fare of workmen from Chicago or elsewhere, if sent specially for that purpose, together with hotel bills to plaintiff. The actual cost of repairing, replacing, and maintaining said sign under its contract to the Durham tobacco people is plaintiff's full measure of damages, and this you will ascertain and allow in such sum as from a preponderance of the evidence you find to be such cost, but you cannot

allow exemplary damages; that is, you must not assess damages for the purpose of punishing the defendants." It is argued that the true measure of damages is the market value of the material and labor necessary to replace the sign, and that the instruction was erroneous in allowing plaintiff to recover hotel bills and railroad fare. Ordinarily, the reasonable costs and expense of replacing or restoring the sign each time it was obliterated by the defendants was the proper measure of damages. (3 Sedgwick, Damages [8th ed.] sec. 932; *Harrison v. Kiser*, 79 Ga. 588; *Graessle v. Carpenter*, 70 Ia. 166; *Vermilya v. Chicago, M. & S. P. R. Co.*, 66 Ia. 606.) As to the allowance for railroad fare and hotel bills these might or might not be proper elements of damages, according to the circumstances of the case. In this action the defendants brought out on cross-examination of one Cartwright, a witness called and examined on behalf of the plaintiff, the testimony relating to expenses incurred by plaintiff for railroad tickets and hotel charges for the persons who repainted the sign, and it was likewise shown beyond controversy that workmen could not be obtained in Omaha who could restore the sign. It was proven that such workmen were employed at a monthly salary ranging from $80 to $100 and their expenses paid. Moreover, the defendants tendered, and the court gave, this instruction on the subject: "The jury are instructed that the plaintiff, if entitled to recover, is entitled to recover only the value of the necessary expense in replacing the sign upon the wall, and unless you believe from the evidence that in replacing said sign it was necessary to bring workmen from another city to do the work, you will not consider the evidence as to railroad fare in connection with your estimation of the amount of damages." Plaintiff cannot be heard to complain of the instruction given by the court on its own motion, since it was along the same line, and announced the same principle, as that given at the request of the defendants. (*Jonasen v. Kennedy*, 39 Neb. 314; *Richards v. Borowsky*, 39 Neb. 774; *City of Omaha*

*v. Richards*, 49 Neb. 244; *American Fire Ins. Co. v. Landfare*, 56 Neb. 482.)   No prejudicial error in the record having been pointed out, the judgment is

AFFIRMED.