## WEADOCK v. CHAMPE.

1. VENDOR AND PURCHASER—OPTIONS—CONTRACTS—DESCRIPTION.

   A description of a block of store buildings in a written contract, or option, as the "Eagle Block" carried with it the buildings and rights of support of the adjoining block, in the form of a party wall, existing as such when the owner granted the option.

2. SAME—DEED—LEASE—ACCEPTANCE.

   Acceptance of the terms of the option required an unconditioned assent to its terms, and a letter suggesting a change in the description, and enclosing a deed describing the property by dimensions, etc., so as to extend beyond the center line of the wall, and not including a party wall agreement proposed by the defendant, was a counter proposition and did not create a contract, where the deed included about seven inches of the adjoining store block, instead of establishing the dividing line in the center of the party wall.

3. SAME—OFFER AND ACCEPTANCE.

   *Held*, also, that by providing in the acceptance that the conveyance should be subject to all existing party wall agreements of record in the registry office on the date thereof, the vendee in the option excluded certain existing party wall rights that were not of record and that defendant was relieved from the effect of an acceptance and was justified in refusing the counter proposal.

4. SAME—PARTY WALLS—LEASES—OPTION.

 Where plaintiff, after securing the option, examined the leases existing upon the property, and, having retained them for some time, expressed himself as satisfied, a deed, executed by defendant subject to the outstanding leases, was not objectionable, though the leases were not recorded in the office of register of deeds.

5. LIMITATION OF ACTIONS—PARTY WALL—RECORD.

 And where a division wall between two buildings was used for the period of the statute of limitations it became a party wall, without any recorded agreement.

Error to Saginaw; Gage, J. Submitted June 26, 1916. (Docket No. 72.) Decided December 21, 1916.

Assumpsit by G. Leo Weadock against Elizabeth Champe for breach of contract for the sale of real estate. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*H. E. Spalding,* for appellant.

*Miles J. Purcell* (*Humphrey, Grant & Humphrey,* and *George W. Weadock,* of counsel), for appellee.

STONE, C. J. This is an action in assumpsit to recover damages for the breach of a contract alleged to have been made by the defendant to sell and convey certain premises to the plaintiff. The case was tried by the court without a jury, and resulted in a judgment for the plaintiff of $6,000.

At the time of the alleged contract, the defendant owned certain premises in lots 7 and 8 of block 34 of Hoyt's subdivision in the city of Saginaw, situate on the south side of Genesee avenue between Washington avenue and Franklin street. On it were situate two brick blocks, the westerly one Nos. 214 and 216 Genesee avenue, known as the "Eagle Block," the other known as the "Tea Store" property, and numbered

218, adjoining the Eagle Block on the east. Both these blocks had been built before 1870, and, with the exception of certain alterations in their fronts, had remained unchanged. Between the two blocks was a single brick wall 12 inches thick, which wall supported the joists of both buildings, and served as a party wall for the benefit of both. The easterly side line of this wall was some 47.7 feet west of the easterly side line of lots 7 and 8, and west of Franklin street upon which both lots (lot 8 lying south of lot 7, and forming the rear part of the premises in question) abutted.

On February 2, 1907, the defendant, at plaintiff's request, executed the following option, drawn by the plaintiff, but running to his brother:

"This contract, made this 2d day of February, A. D. 1907, by and between Elizabeth Champe of Saginaw, Michigan, party of the first part, and John V. Weadock of the same place, party of the second part, witnesseth:

"The said party of the first part, in consideration of the sum of one dollar and other valuable consideration to her in hand paid by the said party of the second part, does hereby agree that she shall and will at any time on or before April 1, 1907, from the date hereof, at the written request of the said party of the second part, execute and deliver to him, or to any person or persons as he, the said party of the second part shall direct in writing, a good and sufficient warranty deed of the following described land, situated in the city of Saginaw, county of Saginaw, State of Michigan, to wit:

"The property known as the Eagle Block situate on the south side of the Genesee avenue between Franklin street and South Washington avenue in the city of Saginaw, Michigan, for the sum of twenty-four thousand ($24,000) dollars, payable as follows: Cash on delivery of warranty deed, abstract and tax history.

"And the said party of the first part does hereby further agree that she shall and will not before April 1, 1907, from the date hereof, sell, convey, mortgage or otherwise encumber the said land, or any part

thereof, or do, or permit to be done, any act or deed to diminish or encumber the title to said land.

"It is agreed by and between the parties hereto, that if the said party of the second part at the expiration of the aforesaid limited time shall have declined or omitted to make application for the purchase of said land at the price aforesaid then this instrument shall be void, and the above sum of one dollar so paid as aforesaid shall be forfeited by the said party of the second part, and the said party of the first part shall have the right to retain the same as and for liquidated damages, and the said party of the second part shall relinquish to said party of the first part all claim to the said land, either in law or equity, and also all claim to the said sum of one dollar, so paid as aforesaid, and no claim of the said party of the second part under this contract shall then be effectual.

"In witness whereof, the said party has hereunto set her hand and seal the day and year first above written.

"ELIZABETH CHAMPE.   [Seal.]

"In presence of:
  "G. LEO WEADOCK.
  "GEO. W. WEADOCK.
"STATE OF MICHIGAN,  }
  "COUNTY OF SAGINAW, } ss.:
"On this 2d day of February, A. D. 1907, before me, the subscriber, a notary public in and for said county, personally appeared Elizabeth Champe to me known to be the same person described in and who executed the foregoing instrument, as vendor, and acknowledged the same to be her free act and deed.

"G. LEO WEADOCK,

"Notary Public in and for Saginaw County, Mich.
"My Commission expires 3/5/1910."

Shortly after the execution of the option, the defendant, who lived at the Hotel Vincent in Saginaw, went to Washington, D. C., on a visit, returning April 3, 1907. During her absence, and on March 27th, the plaintiff sent to her at her Saginaw address the following letter:

,"SAGINAW, MICH., March 27, 1907.
"MISS ELIZABETH CHAMPE,
  "c/o Hotel Vincent,
    "Saginaw, Michigan.

*"Dear Madam:*  In re Eagle Block.  In pursuance to your option to Mr. John V. Weadock dated February 2, 1907, now held by me, I hereby request you to execute and deliver to the People's Savings Bank of the city of Saginaw, Michigan, a good and sufficient warranty deed to G. Leo Weadock of the following described land, viz.:  East twenty-one and a half (21½) feet of the west fifty-one and a half (51½) feet of lot seven (7), and the east twenty-one and a half (21½) feet of the west fifty-one and one-half (51½) feet of north half of lot eight (8), also west twenty-one and a half (21½) feet of east sixty-eight and a half (68½) feet of lot seven (7), and the west twenty-one and a half (21½) feet of east sixty-eight and a half (68½) feet of north half of lot eight (8) in block thirty-four (34) of Hoyt's plat of the city of East Saginaw, now a part of the city of Saginaw, Michigan, according to the recorded plat thereof.  It being the intention of said first party to hereby convey all of the property known as the 'Eagle Block' situate on the south side of Genesee avenue between Washington avenue and Franklin street and being known as Nos. 214 and 216 Genesee avenue in the city of Saginaw, Michigan, subject to all existing party wall agreements as of record in the office of the register of deeds of Saginaw county, Michigan, on the 2d day of February, 1907.  So that I may pay the purchase price, viz. $24,000, to you at said bank on or before April 1, 1907.  To save you trouble in the premises, I herewith hand you a deed in pursuance to your option which you may submit to your attorney and if you find it satisfactory, execute and deliver on or before April 1, 1907.
                    "Very truly yours,
                              "G. LEO WEADOCK."

On the same day, he sent to her Washington address the following letter, inclosing therein a copy of the Saginaw letter:

"SAGINAW, MICH., March 27, 1907.
"MISS ELIZABETH CHAMPE,
    "c/o Riggs House,
        "Washington, D. C.
.*"Dear Madam:* I herewith inclose you copy of a letter sent forward to your Saginaw address by reg- istered mail today. I am also inclosing you a deed, a duplicate of that sent to Saginaw.

"We have carefully compared the description in this deed with that in the deed to you covering the same property and would suggest that you execute same before some notary or other person authorized to take acknowledgments in the District of Columbia, or wher- ever this letter may reach you, and forward to the People's Savings Bank of this city, with instructions to them not to deliver to me except upon receipt of $24,000 and then give such instructions as you may want in regard to $24,000, which I will pay you for this property. This is the clean way of doing it and the most convenient for you.

"Please give this matter your immediate attention, as I desire to get possession of this property before the first of the month. At any rate, I claim rent from the first of April.

"Trusting that you are well and enjoying your east- ern trip, I remain
                        "Very truly yours,
                            "G. LEO WEADOCK."

Each letter contained a draft of deed, the descrip- tion of which was identical with that recited in the letter sent to defendant, care of the Hotel Vincent. These letters constitute the only written acceptance claimed to have been made of defendant's offer to sell and convey the Eagle Block. No other written request or demand for conveyance than that contained in these two letters of plaintiff was ever made upon the de- fendant. John V. Weadock, to whom the option ran, neither in writing nor otherwise, ever requested her to execute a deed, either to himself or to any one else. John V. Weadock did, on March 30th, make a written assignment of the option to the plaintiff, but defend-

ant was not notified of this assignment. These letters sent by the plaintiff to the defendant were received by her on April 3d, on her return to Saginaw. She inquired at the bank to ascertain if the $24,000 was there for her, and was told it was not. She, however, directed her attorney to prepare a deed to the plaintiff, for conveyance of the Eagle Block, and a deed was accordingly prepared, executed, and tendered to the plaintiff on April 10, 1907. The description in that deed was as follows:

"All that part of lots seven (7) and eight (8) in block thirty-four (34) of Hoyt's plat of the city of East Saginaw, Michigan, described as follows: Commencing at a point on said lot seven (7) on Genesee street, one hundred and fifty (150) feet east from the northwest corner of lot 6 in said block 34 and on the line of premises heretofore deeded by Cornelia A. Young to Daniel S. Hall, thence south on a line parallel with Washington street, ninety (90) feet, thence east on a line parallel with Genesee street, twenty-one and one-half (21½) feet, thence north on a line with Washington street, ninety (90) feet to Genesee street, thence west along the south boundary line of Genesee street twenty-one and one-half (21½) feet to the place of beginning, being also described as the east twenty-one and one-half feet of the west fifty-one and one-half (51½) feet of lot seven (7) and the east twenty-one and one-half (21½) feet of the west fifty-one and one-half (51½) feet of the north half of lot eight (8) in said block, and subject to the joint use of the party wall on the westerly line of said described property, which party wall may be used in common with the owner of the adjoining premises; also all that part of lots seven (7) and eight (8) in block thirty-four (34) of Hoyt's plat of the city of East Saginaw bounded and described as follows:

"Commencing at a point one hundred and seventy-one and one-half (171½) feet distant on the south line of Genesee avenue, from the northwest corner of lot six (6) in said block, running thence southerly on a line parallel with Washington avenue, ninety (90) feet, thence easterly on a line parallel with Genesee

avenue, twenty-one and one-half (21½) feet, thence northerly on a line parallel with Washington avenue to the south line of Genesee avenue, thence westerly on the south line of Genesee avenue twenty-one and one-half (21½) feet to the place of beginning, being also described as the west twenty-one and one-half (21½) feet of the east sixty-eight and one-half (68½) feet of lot seven (7) and the west twenty-one and one-half (21½) feet of the east sixty-eight and one-half (68½) feet of the north half of lot eight (8) in said block thirty-four (34), and subject to the joint use of the party wall on the easterly line of said described property, which party wall is to be used in common by the parties hereto, and the center line of said party wall being the division line between the properties deeded to second party and the property still owned by the first party and occupied by the Grand Union Tea Company.

"It is the intention of the first party to hereby convey all the property known as the Eagle Block, so called, and all rights and appurtenances acquired by user, adverse possession or written instruments relating thereto, and being Nos. 214 and 216 Genesee avenue, in the city of Saginaw, Michigan.

"This conveyance is also made subject to the leases given by first party to A. J. Schirmer dated April 1, 1906, and the firm of Oppenheim & Levy, dated April 1, 1916, and W. C. McKinney, dated April 1, 1906, and the occupation of the office on second floor over No. 214 Genesee avenue by Dr. O. P. Barber."

The effect of this deed was to make the easterly line of the property conveyed, being the division line between it and the Tea Store property retained by the defendant, the center line of the wall lying between the Eagle Block and the Tea Store, and to declare that wall a party wall, as it had always been in fact. The plaintiff refused to accept the deed, as he testified, for the following reasons: That it established a party wall agreement in the easterly line of the building, whereas at the time of the option there was no party wall agreement of record, and he knew nothing about

it; that it established a dividing line between the two properties; and that the deed did not set forth the terms of the leases which it mentioned, nor were these leases of record, nor was the option subject to any lease. It was undisputed that an abstract and tax history had been given the plaintiff some time in February, and the leases referred to in the last-named deed had also been submitted him some time in March. Although the plaintiff claimed that the option was not subject to any lease, his letter of March 27th, in which he expressed a desire to get possession before April 1st, and claiming rent from that date, indicates that he expected to take the property, with which he was well acquainted, subject to the outstanding leases. After this refusal, and on April 12th, the defendant declared the deal off, and on April 20th she sold and conveyed the property for $24,000 to another person, using the same description contained in the deed which the defendant had tendered the plaintiff on April 10th. The instant suit was thereupon brought.

The foregoing facts are substantially covered by the court's findings, except the fact that the easterly line of the description given in the plaintiff's letter of acceptance, and for which he demanded a deed, is at least seven-tenths of a foot east of the easterly line of the wall between the Eagle Block and the Tea Store, and is within the Tea Store property, and the fact that both buildings were built before 1870, and had remained substantially unchanged, and that the wall between them gave support to both and was used as a party wall, and the fact that John V. Weadock never requested a deed. The court made no findings on either of these points, though duly requested by the defendant's proposed amendments so to do. The case has been brought here by the defendant upon a writ of error.

The exceptions to findings made, and to disallowance of amendments proposed, and the assignments of error thereon, are numerous; but we shall pass some of them and consider the following questions:

(1) Whether there was a valid acceptance of the option.

(2) Assuming that there was a valid acceptance, was the plaintiff warranted in refusing to accept the deed tendered by defendant?

1. It is the claim of defendant that there was no valid acceptance of the option, because plaintiff's letter of acceptance demanded more land than the option covered; and that this was an attempted modification of the defendant's offer, and not the unconditional acceptance necessary to turn that offer into a binding contract. It clearly appears that by the terms of the option the defendant agreed to sell the "Eagle Block." According to the undisputed testimony, both that block and the Tea Store adjoining it upon the east were built before 1870, and except for changes in the fronts, immaterial here, remained in their original condition. They were separated by a 12-inch wall, into which the joists of both entered, and which had always been used as a party wall by both. The plaintiff, who drew the option, was familiar with the property. The ownership of the blocks was originally separate, but had become united in 1897, and the defendant owned them both. We think that, in view of these facts, it cannot be doubted that the "Eagle Block," called for by the option, meant the building and land on which it stood, together with party wall rights in the division wall between it and the Tea Store property. *Tuthill* v. *Katz*, 163 Mich. 618 (128 N. W. 757). The plaintiff therefore was required, in order to convert the option into a contract, to accept that option in writing and according to its terms. He might, properly, demand a conveyance of the Eagle Block, described in accordance

with the legal meaning of that term, as above indicated. What he did do in his letter of acceptance was to state that, in pursuance to the option, he requested a deed to himself of a description calling for the west 21½ feet of the east 68½ feet of lot 7, and of the north half of lot 8, which made the easterly boundary of the parcel demanded a line 47 feet west of the easterly boundary of lot 7. By the uncontradicted testimony of the surveyors, both for plaintiff and defendant, the easterly edge of the wall between the Eagle Block and the Tea Store is more than 47.7 feet distant from the easterly line of lot 7. The plaintiff's "acceptance," therefore, was a demand of a conveyance covering, not only the entire division wall, but a strip 7/10 of a foot wide east of that wall, and inside the Tea Store.

Furthermore, by the proviso that the conveyance was to be subject to all existing party wall agreements, *as of record in the office of the register of deeds on February 2, 1907,* he excluded all party wall rights for which there was no agreement of record. There was such an agreement of record as to the wall between the Eagle Block and the property west of it; but there was no such agreement regarding the wall in question between the Eagle Block and the Tea Store. The defendant had offered to sell one thing, the Eagle Block. The plaintiff offered to accept another thing, to wit, a parcel of land including the Eagle Block, the entire division wall, and a strip of land 7/10 of a foot wide east of that wall. This was not an acceptance, but a counter proposal, which defendant properly rejected by refusing to sign any deed which embodied it. We do not think there had been any such merging of the title of the two properties as extinguished any party wall easement theretofore existing. Even had the two buildings been erected by the defendant as owner, the

sale of one of them as a block or building would pass the title, subject to the right of that retained, to the use of the wall between them as a party wall. *Hendricks* v. *Stark*, 37 N. Y. 106 (93 Am. Dec. 549); *Schaefer* v. *Blumenthal*, 169 N. Y. 221 (62 N. E. 175); *Ingalls* v. *Plamondon*, 75 Ill. 118. From the testimony of the plaintiff it appears that he claimed the whole of the east wall of the Eagle Block.

2. It is the further claim of defendant that, assuming that there was a valid acceptance, plaintiff was not justified in refusing the deed tendered by defendant, and that such refusal relieved the defendant of any farther liability.

Was the provision in the deed tendered, making the conveyances subject to existing tenancies, proper?

As already stated, the leases were delivered to the plaintiff in March for examination, and were retained by him some time, and he expressed himself as satisfied with them. We have referred to his letter which spoke of rent from April 1st. The fact that the leases were not of record is not important, as he knew their terms. We do not think that the provision rendered the deed objectionable.

Was the plaintiff entitled to object to the party wall agreement contained in this deed?

"Every wall of separation between two buildings is presumed to be a common or party wall if the contrary be not shown, and this not only is a rule of positive ordinance, but is a principle of ancient law." Washburn's Easements and Servitudes (4th Ed.), p. *458; *Hendricks* v. *Stark, supra;* and other cases cited above.

We think the law is well settled that, where a division wall between two buildings has for a period larger than that of the statute of limitations been used for the support of both buildings, it becomes in effect a party wall, whether it was originally constructed as

such or not, and without any express agreement between the owners of the buildings, and that one who purchases such a building takes it subject to such party wall right. Such was the case with the east wall of the Eagle Block.

As above stated, this wall supports both the Eagle Block and the Tea Store buildings, and both buildings have been standing for upwards of 40 years, and there was no evidence of any change in the use of this wall. The necessary inference is that its use as a party wall has been continuous during that period. If no mention at all had been made in the deed respecting the use of this wall as a party wall, the plaintiff would have taken title subject to the joint use of this wall as such by the two buildings. The party wall agreement mentioned in the deed, therefore, did nothing more than to state the rights of the parties respecting this wall that would have been implied without such provision in the deed. The plaintiff was familiar with the property. He had appraised it as one of the appraisers in the matter of the estate of Michael Jeffers, deceased. He also testified that he knew definitely the location of the block, and that he informed the defendant that no further description than the words "Eagle Block" in the option was necessary. The description in the deed tendered, fixing the center line of the east wall as the easterly boundary of the premises, was proper and gave the plaintiff all that he was entitled to, under the option.

Another matter appearing in the record should be referred to. The estate of Michael Jeffers, deceased, owned both the Eagle Block and the Tea Store property. It was assigned in the administration of the estate to the defendant and John Jeffers in equal portions. The two heirs, in 1906, adjusted their interests by a partition deed, and in that deed, as shown by the

memorandum in the record, for the first time in the chain of title, occurs the description which the plaintiff claims he was entitled to under the option. That description is given in that deed only as an alternative to the description already referred to of the 43-foot parcel, commencing on a line 150 feet east of the northwest corner of lot 6, being the description in the deeds under which Michael Jeffers derived his title. As has been already shown, that alternative description is in fact erroneous, as a description of the Eagle Block, because calling, not only for the entire division wall, but for a strip of land to the east of that wall, and in the Tea Store.

The fact should not be lost sight of that all the plaintiff claimed was the Eagle Block. "The Eagle Block" may be said to be the "master description," or the controlling description, in the option; and there is no claim that this description was a mistake. We held, in *Tuthill* v. *Katz, supra,* that such a description was sufficient; and, although the instrument itself contained also an erroneous description, the mistaken portion of the deed must be rejected, and the remainder be treated as controlling. Here, the instrument itself contained no erroneous description, and an erroneous alternative description in the partition deed cannot avail plaintiff under his option for the purchase of the Eagle Block.

So in any view which we are able to take of the case under the undisputed evidence, we think the trial court erred in not entering judgment for the defendant.

For the reasons given, the judgment below is reversed, without a new trial.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.