I. LEVINE et al., Appellants, v. E. CHINITZ et al., Appellees.

No. 46239.

APRIL 6, 1943.

Robert T. Dalton and R. Kent Martin, both of Atlantic, for appellants.

Roscoe S. Jones, Boyd M. Cambridge, R. W. Cockshoot, and J. R. Larson, all of Atlantic, for appellees.

HALE, J.—Plaintiffs and defendants are adjoining lot owners in the city of Atlantic, I. Levine holding the south lot, No. 9, by contract with G. M. Chaffee, owner, and intervener herein; and defendants being the owners of Lots 7 and 8, Lot 8 adjoining Lot 9 on the north, in Block 14. There are twelve lots in the east half of Block 14, which faces east on Walnut Street in Atlantic, the lots being numbered from the north beginning with No. 1.

Plaintiffs own a brick building, the north wall of which they claim is entirely located on their own land along the north side of Lot 9. Defendants undertook to put a building upon their property, Lot 8, and this action was brought to enjoin them from removing the lateral support from plaintiffs' brick wall and also to prevent defendants from cutting and chiseling sections out of plaintiffs' brick wall to anchor the piers of the new building. Further allegations of plaintiffs are that defendants are piling scrap iron on a strip of land lying north of the edge of the north wall of plaintiffs' building, which plaintiffs allege to be their ground. Chaffee intervenes with Levine and adopts the allegations of the petition.

The answer of defendants, the wife intervening as a party defendant, claims that the north wall of plaintiffs' property is a party or joint wall and that the true boundary between the lots is the center line of said wall running east and west from the street to the alley, and claims a half interest in said brick wall; alleges that the work done on the new building did not deprive plaintiffs of lateral support and was done with due care and diligence; alleges that the center line of the brick wall, since December 8, 1904, has been treated as the division line by plaintiffs and their predecessors in title; alleges that such wall supported the joists of a building on Lot 8, and alleges acquiescence for more than ten years last past, adverse possession, actual, open, visible, distinct, notorious, hostile, and undisturbed title in defendants to all the property north of the center line of the brick wall and the land north of the line running westerly through the center of said brick wall, that such division line has been recognized by defendants and plaintiffs as the true line; and asks the dismissal of plaintiffs' petition. Defendants also filed counterclaim setting out a portion of the record title, continuous claim to

ownership since 1928, use and occupancy of the alleged land north of the center of the brick wall, and the same allegations as to adverse possession under color of title and claim of right, recognition, acquiescence, and estoppel, and the bar of the statute of limitations against any claim of plaintiffs. Defendants allege that they are the record title owners of a one-half interest in the north brick wall in controversy and the appurtenances thereof. Defendants also complain of a cement-block wall built by plaintiffs at the rear end of the brick wall in controversy, asking that plaintiffs be required to remove such wall and praying the court to fix the boundary line between Lots 8 and 9 as claimed by defendants and for general equitable relief.

When the matter of the trial of the issues was taken up the court determined, by agreement of the parties, to hear first the issues as raised by defendants of adverse possession and acquiescence.

So far as may be necessary at this time, we refer to the chain of title, which was stipulated at the beginning of the trial. In 1903, and prior thereto, L. A. Laurenzen, who built the brick building, was the owner of both Lots 8 and 9, which upon his death became the property of his widow. On December 8, 1904, the widow, Helena Laurenzen, conveyed to R. Laurenzen Lot 8 and a one-half interest in the north brick wall on Lot 9. On June 20, 1916, R. Laurenzen and wife conveyed to S. R. Nelson Lot 8 and a half interest in the north brick wall on Lot 9. Nelson afterward, on November 13, 1920, conveyed to Kewley Lots 7 and 8. Kewley thereafter conveyed said Lots 7 and 8 to Jake Kaplan, who conveyed them to the defendant, E. Chinitz, on March 10, 1928; Anna Chinitz, defendant's wife, afterward receiving a half interest therein. This is the devolution of title which resulted in the ownership of the defendants.

Lot 9 was transferred by a number of conveyances commencing with Helena Laurenzen through various owners up to February 26, 1938, when G. M. Chaffee became the owner of said lot. None of the deeds in the chain of title to Lot 9 from the Laurenzens on made any reservation or mention of the brick wall, such as had appeared in some of the deeds to Lot 8 in the chain of title of the defendants. No conveyance by S. R. Nelson

of the north six and one-half inches of the brick wall, which was contained in his original deed, appears of record until April 11, 1941, when apparently, after the disagreement between the parties began, said S. R. Nelson, by quitclaim deed to I. Levine, conveyed the north half of the brick wall on the north side of Lot 9. But in his testimony given in this case on behalf of plaintiff Nelson stated that he did not claim he owned anything after he conveyed the building in 1920 to Kewley. He further stated that originally he merely transferred Lot 8 to the incoming purchaser with the right to use the brick wall, and that there was no special agreement as to any wall on Lot 9 and nothing was said about the wall at all, and the only right he transferred was the right to use the wall to support the building that was on there. We think Nelson was correct in saying that he did not claim he owned anything after he conveyed the building in 1920—for reasons hereinafter set out. Apparently this later quitclaim deed was an afterthought intended to strengthen plaintiffs' title.

We gather from the evidence that the exact locations of the lot lines in the immediate vicinity of these lots were not accurately known, and there seemed to be some question not only as to the street lines east of and in front of the lots but also as to the division lines between the lots themselves. As we read the evidence we do not find that the exact survey line between Lots 8 and 9 was ever definitely determined.

For many years that part of the tract designated as Lot 8, the Chinitz lot, was occupied by a frame building, and the evidence shows that this building, while it did not extend the full length of the lot east and west, was supported on the south by the walls of the brick building on Lot 9, the Levine lot, which constituted its south wall. The walls in the rooms in the south part of the frame building were plastered directly on the bricks of the adjoining building. The frame building also extended above the roof and over and onto a part of the wall of the brick building, and the drainage from the roof of the north building ran onto the roof of the brick building. This frame building was constructed some two or three years after the brick building on the Levine tract was erected in 1901. It was afterward, in 1930 or 1931, torn down, and from the rear end of the brick wall dividing the two properties defendants constructed a fence, the north

side of which was flush with the north side of the Levine building, but the posts and a 2x4 timber to which the posts were attached extended to the south so that the fence occupied a total width of about eight inches and extended from the brick building to the alley on the west. When the frame building was torn down the front part of the lot was enclosed for a time before the beginning of construction of defendants' new building. It appears from the evidence that the frame building was supported by the north brick wall of the adjoining building on the south and the joists of the frame building protruded into and rested upon the bricks in the adjoining wall. There seems to be little question from the evidence that whatever the true survey line of division between Lots 8 and 9, for many years the brick building, mostly located on Lot 9, had been used as a support and wall for the frame building, and that throughout the entire time from 1904 to the institution of this action Lot 8 had been occupied by defendants and their predecessors in title either by a building or a fence division line extending to the center of the brick wall claimed by plaintiffs to be entirely upon their lot.

The court by its decree, on the 29th day of December 1941, stated the facts and held that the owners of Lot 8 had acquired and still have a continuing easement in and to the north half of the north wall of the Levine building extending to the center of the brick wall, and that the defendants have the right to use the ground under the north half of said wall for footings and foundations to build their building on Lot 8 and the right to connect their wall upon the north half of the brick wall. The court further confirmed the title of defendants to all of the ground north of the north face of the brick wall and extending east or west therefrom in Lot 8; and held that a wall running from the rear end of the north wall in controversy west to the alley, constructed in 1938 by plaintiffs, extended upon defendants' property, and directed that if defendants desired to remove the wall they might do so at their own expense within two years.

From this decree plaintiffs appealed to this court and the defendants filed notice of cross-appeal but took no further action thereon. The only complaint defendants make is that the court should have entered a decree finding the center of the brick wall

to be the division line between Lots 8 and 9 instead of an easement as given by the court.

I. In Division IV of plaintiffs' argument it is claimed that the pleadings do not entitle the defendants to the relief to which they claim to be entitled, and a number of cases are cited where relief was not granted because not specifically prayed. Examination of the answer and counterclaim does not so indicate. In the answer defendants asked that plaintiffs' petition be dismissed and gave various reasons, claiming ownership of a one-half interest in the north wall, continuous and adverse possession, that the true division line is the center of the wall, acquiescence, and estoppel. The same claims are made in the counterclaim and the prayer thereto, together with a prayer for establishment of title and general equitable relief. We hold that there is no merit in this claim of plaintiffs.

II. Neither are the plaintiffs correct in their contention that the case should have been disposed of under the procedure for settling disputed boundaries as set forth in chapter 521 of the 1939 Code of Iowa. Section 12298 thereof specifically provides that the issues of recognition and acquiescence may be tried by the court before a commission is appointed to determine the disputed boundary and this was the correct procedure followed in this case.

III. Divisions I and II of plaintiffs' argument assert that defendants have no color of title to the north half of the brick wall and that they made no claim to more than their deed conveyed to them; that by tearing down the frame building the owner of Lot 8 abandoned all right to any interest, if any, in the wall. Plaintiffs are in error when they assert that defendants had no color of title. It is true there was no conveyance of the wall directly to them, but as shown by the stipulation heretofore referred to, Helena Laurenzen, the then owner, in December 1904, conveyed to R. Laurenzen Lot 8 and a one-half interest in the north brick wall on Lot 9, and the grantee of that deed, R. Laurenzen, in turn in 1916 conveyed the same—that is, Lot 8 and a one-half interest in the north brick wall on Lot 9—to Nelson. In subsequent deeds no mention was made of the wall, but by the continued use of the interest in the property conveyed

by defendants' predecessors title was asserted thereto until the destruction of the frame building. Now, since this was a conveyance of the brick wall and not of the real estate, the court correctly held that it was an easement. By these deeds it became an appurtenance to the property and passed to the subsequent owners of said Lot 8 throughout the various changes of ownership and would continue to do so unless the right thereto was destroyed in some manner. When an easement once becomes appurtenant, future conveyances of the dominant estate, whether with or without reference to such right of easement, carry with such conveyances as appurtenant thereto the reservation or easement in the original deed. See Teachout v. Capital Lodge of I.O.O.F., 128 Iowa 380, 104 N. W. 440, and cases cited therein. This rule is not predicated upon the doctrine of easement by necessity but upon an implied covenant with reference to the beneficial enjoyment of the premises to which the easement is appurtenant. See Reed v. Gasser, 130 Iowa 87, 90, 106 N. W. 383, 385, wherein it is said:

"The next contention for appellant is that the conveyance to S. Francisca Bunbury, through whom plaintiff claims, contained no grant which would carry the right of way over Shilliam's parcel, now owned by defendant. But this contention is also without merit. It is conceded for appellant that an easement appurtenant to land will pass by conveyance of the land without an express grant or easement. See, to this effect, Teachout v. Capital Lodge, 128 Iowa 380."

See, also, Kane v. Templin, 158 Iowa 24, 28, 138 N. W. 901, 902, where the rule is stated:

"Easements appurtenant pass with the description of the property to which they are appurtenant without specific designation, and, on the other hand, the purchaser of the servient property takes subject to the easement without express reservation." Citing Teachout v. Capital Lodge of I.O.O.F., supra; and other cases.

See, also, Thul v. Weiland, 213 Iowa 713, 239 N. W. 515; and Cassens v. Meyer, 154 Iowa 187, 134 N. W. 543, citing various cases.

We further call attention to the fact that at the time the original conveyance to R. Laurenzen was made his grantors in the chain of title were the owners of both lots, and it was during the ownership of these grantors that the connection was made between the two buildings, which connection continued until about 1930 or 1931, so that there were not only express conveyances of the right to this wall but the actual use thereof for a long period of time, and under such circumstances the rule cited by appellees in their argument, as given in 47 C. J. 1331, section 20, is applicable:

"Where the owner of buildings standing on adjoining lots, having a common wall forming a part of each building, conveys such lots to different persons, each acquires title to one half the wall and an easement for its support as a party wall in the other half, although the conveyances are silent as to the rights of the parties in the wall. The fact that the wall stands wholly on one of the lots conveyed has been held not to prevent the easement from arising in favor of the grantee of the other lot. In the event that one of the lots is retained by the common owner, the same rights subsist between the grantor and the grantee."

■ This court has uniformly held that in cases such as this the conveyance of the ownership of the dominant tract or lot takes with it the right to the easement whether such easement is specifically conveyed or not, and the evidence here shows the continued use of this easement by defendants and their predecessors in title in some form or manner in addition to the right which they acquired by grant in the two deeds. Based on their record title, the continued use of the premises shows beyond any doubt the intent of defendants to assert title. They not only hold title by grant but also by adverse possession.

■ IV. Has the right thus acquired through express grant and continued and recognized use been destroyed in any manner? We do not think there is anything in the evidence to indicate any such destruction. While it is possible that the right to an easement may be abandoned, yet there is nothing in the evidence in the present case to indicate any such loss or abandonment.

The authorities hold that the mere nonuser of an easement

appurtenant to a dominant estate does not necessarily result in its loss in the absence of adverse user by the owner of the servient estate. See Barlow v. Chicago, R. I. & P. R. Co., 29 Iowa 276; Kane v. Templin, supra; Reed v. Gasser, supra; and Teachout v. Capital Lodge of I.O.O.F., supra; all of which hold that mere nonuser of an easement during a period of time within which there is no occasion to use it does not tend to show permanent abandonment. We quote from the Gasser case, at page 91 of 130 Iowa, page 385 of 106 N. W.:

"Counsel concede, however, that an easement created by deed cannot be lost by mere nonuser, and that only by nonuser for the statutory period of limitation, during which period the servient estate has been put by its owner to a use inconsistent with the enjoyment of the easement, will the easement be extinguished; so that practically the claim of nonuser is simply another form for the claim of adverse possession."

See, also, annotation to Collins v. Reimers, 181 Iowa 1143, 165 N. W. 373, 1 A. L. R. 878, 884, where the entire subject of nonuser of an easement is reviewed and many cases cited. In said annotation it is editorially stated, at page 885:

"Where the easement is created by grant, deed, or reservation, even though the nonuser extends for or beyond the statutory prescriptive period, it does not affect the dominant estate, since the interest in the land represented by the easement can be extinguished only by the usual means for the loss or transfer of estates in land, and mere nonuser is not effective in that regard." See cases cited.

We need not refer further to the many authorities relating to this question. The evidence does not show abandonment or adverse possession by plaintiffs after the removal of the frame building. Under the record, our holding must be that defendants had acquired the right to an easement and that at no time is there any evidence of their having lost it, either by lapse of time or abandonment.

We need not refer to the ruling of the court as to the concrete-block extension of the brick wall. It is not seriously ques-

tioned and is, if anything, more favorable to the plaintiffs than defendants.

It is unnecessary to go further into the arguments presented, which are all disposed of, we believe, by our holdings herein set out. We are satisfied that the decree of the district court was right and that the cause should be affirmed.—Affirmed.

GARFIELD, C. J., and BLISS, MILLER, MULRONEY, WENNERSTRUM, OLIVER, and SMITH, JJ., concur.

MANTZ, J., takes no part.