[No. 39677. Department One. May 15, 1969.]

WILLIAM D. CAMERON, *Appellant*, v. JAYNE M. PERKINS, *Individually and as Executrix, et al., Respondents.**

*Reported in 454 P.2d 834.

*Williams, Lanza, Kastner & Gibbs* and *William D. Cameron,* for appellant.

*Wendells, Froelich & Power* and *Layton A. Power,* for respondents.

RYAN, J.†—The plaintiff-appellant, William D. Cameron, brought this action to enjoin defendants, Clinton R. Perkins and wife, Jayne M. Perkins, from maintaining the south wall of their building, the Frye Hotel garage, in the condition it was in at the time this action was commenced, or in any condition preventing the legal use and occupancy of the lot adjoining on the south, which is owned by appellant. Defendants counterclaimed alleging that appellant had trespassed on their property and had willfully destroyed some of the wall on their property. They prayed for damages and dismissal of appellant's complaint.

After the cause was heard in the trial court and before the findings of fact, conclusions of law, and decree of judgment were entered, Mr. Perkins died and respondents, as executrix and executor of the separate and community estates of Mr. Perkins, were substituted as defendants in the action.

Clinton R. Perkins and his wife, Jayne M. Perkins, conveyed by warranty deed, dated October 20, 1964, to appellant, the property he now owns which is involved in this suit. Appellant's property is a lot which is 60 feet square situated on the northwest corner of 3rd Avenue South and South Washington Street in Seattle. At the time of appellant's purchase, the property was occupied by the Custer Building, a very old and decrepit structure, which had ap-

---

†Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

parently outlived its usefulness and could only be razed so the property could be put to productive use. Although the exact age of the building was not shown, it is clear that it must have been in existence for many decades.

Prior to the conveyance to appellant, the Perkins had held title to both the Custer property and to the lot adjoining on the north, on which the Frye Hotel garage is situated.

At the time of purchase, appellant advised Mr. Perkins of his intention to demolish the old Custer Building and to construct a new, small office building on the premises. This met with Mr. Perkins' approval as did the later demolition to the property line; but, at these times, both parties to the conveyance believed that there were two independent and separate abutting walls.

It was not until the demolition work was approximately one-third completed by appellant's contractor that it was discovered there was only one wall 18 inches thick or four bricks wide separating the Custer Building and the Frye Hotel garage. To all outward appearances, at the time of conveyance, the buildings appeared to be separate. The east end of the wall on 3rd Avenue South had two exterior finishes, the south half being of brick and the north half covered with stucco. A survey of the two properties involved revealed that this wall was centered on the property line.

The demolition continued, revealing a number of voids or hollows in the wall, where windows, doorways, chimneys or chases for plumbing had been placed in the wall many years before and later faced over with bricks on both sides. Appellant removed most of the wall to the property line, leaving the portion of the wall on the respondents' property, which was then, for the most part, two bricks in width, but in some places three and four, and in some of the voids, only one brick in width.

This is not a bearing wall since it provides no structural support to the Frye Hotel garage, but only serves as an exterior surface protecting it from the forces of nature, such as the wind and rain. Respondents urge that the re-

maining wall is so weak that cars parking in the garage might be driven through it, making the building unsafe for use as a parking garage. Appellant, on the other hand, complains that the remaining wall is in such poor condition that it is deteriorating and eroding, causing bricks and mortar to fall on his property making it unsafe for use. Appellant notes that the city of Seattle had refused to issue him a building or land use permit, and that since this controversy had arisen, he had leased the purchased property for the parking of automobiles.

The trial court dismissed appellant's complaint with prejudice. The court further ordered plaintiff to repair the wall so that it would not be hazardous to users of defendant's premises or third parties, and so that it furnishes protection from the elements and from destruction by use of the premises as a garage, and so as not to permit automobiles to be propelled through the wall. The court further decreed that in making these repairs, plaintiff should incorporate such aesthetic or improvement type of treatment as the respondent may desire but at the latter's expense. The court reserved jurisdiction for the purpose of supervising the repairs and determining the distribution of their costs.

A review of the testimony adduced at the trial shows that the cost of repair to the exterior wall of the Frye Hotel garage was not established, and the trial court so found. The effect of the judgment is to require appellant to reinforce the wall on the interior of respondents' property by constructing floor to ceiling walls of steel reinforced concrete block and installing steel revetments on each level of the building to prevent automobiles from being driven through the wall.

There is no precedent in Washington for this case. The first question we must answer is whether or not this wall was a party wall. We believe it was. The term "party wall" has been defined in a number of ways. Among these are the following:

2 Thompson on Real Property, § 395 at 587-88 (1961).

A party wall is a dividing wall between two buildings to be used as an exterior wall for all purposes by adjoining

owners of the buildings, without any exclusive use by either. It is a structure for the common benefit and convenience of both tenements which it separates. It is also said to be a wall erected on the line between two adjoining estates belonging to different persons, for the use of both estates. . . .

The term "party wall" is used in four different senses with respect to division walls: . . . (d) A wall divided longitudinally into two strips, each contiguous owner being sole owner of the strip on his side of the boundary, but having an easement in the other strip for support of his building. In the United States, the fourth type is presumed.

40 Am. Jur. *Party Walls* § 2 at 485 (1942).

A party wall may be defined generally as a wall located upon or at the division line between adjoining landowners and used or intended to be used by both in the construction or maintenance of improvements on their respective tracts, or, more briefly, as a dividing wall for the common benefit and convenience of the tenements which it separates. The term "wall in common," as sometimes used, has the same meaning as party wall. A distinctive feature of a party wall is that the adjacent buildings are so constructed that each derives its support from the common wall. Thus, where each of two persons is seised of a specified half of a wall and nothing more, and no right of support or shelter has been acquired by the one from the other, such a wall is not a party wall.

Appellant urges that the wall in the instant case is not a party wall for the reason that one can be created only by contract or statute. In support of this position, he cites *First Methodist Episcopal Church v. Barr,* 123 Wash. 425, 427, 212 P. 546 (1923), and *Hawkes v. Hoffman,* 56 Wash. 120, 125, 105 P. 156 (1909). In the first of these two cases, we did briefly state that a party wall can be created only by contract or statute, but this was dictum for the reason that the court found there had been a party wall agreement, but that it had been rescinded and the consideration therefor returned. In the *Hawkes* case, there was a party wall agreement in writing between plaintiff and a predecessor in interest of defendant, but this agreement was not recorded until after conveyance by one party to another without

notice. Respondent had built a party wall and by this action was attempting to recover part of the cost as provided by the agreement. The issue in the case was that of obligation to contribute to the cost of building a party wall under these circumstances. There was no question of the creation of a party wall, since it clearly existed by written contract.

■ It must next be determined if a party wall can be established by implied easement as well as by express contract or statute. Our response is in the affirmative. We have long recognized that an easement may be produced by implication, but until now have not been called upon to determine if the rule is applicable to a party wall case.

■ In the case of *Adams v. Cullen*, 44 Wn.2d 502, 268 P.2d 451 (1954), we said at 505-06:

An implied easement (either by grant or reservation) may arise (1) when there has been unity of title and subsequent separation; (2) when there has been an apparent and continuous quasi easement existing for the benefit of one part of the estate to the detriment of the other during the unity of title; and (3) when there is a certain degree of necessity (which we will discuss later) that the quasi easement exist after severance.

Unity of title and subsequent separation is an absolute requirement. The second and third characteristics are aids to construction in determining the cardinal consideration—the presumed intention of the parties as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other. 3 Tiffany, Real Property (3d ed.), 253, 254, § 780; *Bailey v. Hennessey*, 112 Wash. 45, 191 Pac. 863 (1920). In *Rogers v. Cation*, 9 Wn. (2d) 369, 376, 115 P. (2d) 702 (1941), we pointed out that the rule is not a hard and fast one, and that the presence or absence of either or both of these requirements is not necessarily conclusive.

There is no question but that unity of title and subsequent separation are present in the case before us. Before the conveyance by the Perkins to appellant, the Perkins owned both lots involved and they separated one lot by subsequent conveyance to appellants. Whether the easement was apparent may well be subject to question. The courts are not in agreement relative to the degree of ne-

cessity required and a precise definition is impossible. Restatement, Property, § 476. In any event, the one essential element of unity of title and subsequent separation exists here for the creation of an implied easement under present law in this jurisdiction.

We find that courts in other jurisdictions have recognized the rule that owners of abutting properties, on which a party wall has been erected, enjoy an easement in the other's part of the wall even in the absence of express contract or statute creating a party wall.

In *Weadock v. Champe*, 193 Mich. 553, 564-65, 160 N.W. 564 (1916), the court said:

> We think the law is well settled that, where a division wall between two buildings has for a period larger than that of the statute of limitations been used for the support of both buildings, it becomes in effect a party wall, whether it was originally constructed as such or not, and without any express agreement between the owners of the buildings, and that one who purchases such a building takes it subject to such party wall right. Such was the case with the east wall of the Eagle Block.

> As above stated, this wall supports both the Eagle Block and the Tea Store buildings, and both buildings have been standing for upwards of 40 years, and there was no evidence of any change in the use of this wall. The necessary inference is that its use as a party wall has been continuous during that period. If no mention at all had been made in the deed respecting the use of this wall as a party wall, the plaintiff would have taken title subject to the joint use of this wall as such by the two buildings. The party wall agreement mentioned in the deed, therefore, did nothing more than to state the rights of the parties respecting this wall that would have been implied without such provision in the deed.

In the case of *Levine v. Chinitz*, 233 Iowa 212, 8 N.W.2d 735 (1943), the Iowa Supreme Court held that where the owner of two adjoining properties, having a common wall between them, conveys the lots to different persons, each acquires title to his half of the wall and an easement in the other half for support, even though the rights in the wall

were not mentioned in the deeds. The court cited from 47 C.J. p. 1331, § 20 with approval at 219:

"Where the owner of buildings standing on adjoining lots, having a common wall forming a part of each building, conveys such lots to different persons, each acquires title to one half the wall and an easement for its support as a party wall in the other half, although the conveyances are silent as to the rights of the parties in the wall. The fact that the wall stands wholly on one of the lots conveyed has been held not to prevent the easement from arising in favor of the grantee of the other lot. In the event that one of the lots is retained by the common owner, the same rights subsist between the grantor and the grantee."

In *Mary Jane Stevens Co. v. First Nat'l Bldg. Co.*, 89 Utah 456, 57 P.2d 1099 (1936), the court said at 484-85:

It has been held that a separation wall between two buildings is presumed to be a party wall. 47 C.J. 1327, § 9. "Every wall of separation between two buildings is presumed to be a common or party wall, if the contrary be not shown; and this not only is a rule of positive ordinance, but is a principle of ancient law." Washburn's Easements and Servitudes (4th Ed.) 611; *Weadock v. Champe,* supra; *Campbell v. Mesier,* 4 Johns. Ch. (N.Y.) 334, 8 Am. Dec. 570 (Chancellor Kent); *Bellenot v. Laub's Executor,* 104 Va. 842, 52 S. E. 698.

Another case somewhat similar to the present case, involving the problem of damage from the elements because of demolition of one side of a party wall is *In re State Fire Marshal,* 175 Neb. 66, 70, 71, 120 N.W.2d 549 (1963). Here the court stated as follows:

It is the actual existence of the wall as a part of both portions of the building from which the grant and reservation of a party wall must be implied. The land covered by the wall is the several property of the owner of the portion on which it stands, yet the title of each is qualified by the easement to which the other is entitled. See cases cited in note 47, 2 Thompson on Real Property (Perm. Ed.), § 627, p. 251. We said in Shiverick & Co. v. Gunning Co., 58 Neb. 29, 78 N. W. 460, that owners of a party wall are not tenants in common, but each owns in severalty the part thereof situated on his own land, with an easement of support from the other part.

Thus far in the opinion, we have concluded that the wall between the Frye Hotel garage and the Custer Building is a party wall. Further, we have declared that this party wall was created by an implied grant of an easement due to the conveyance by the Perkins of the Custer Building lot to appellant. In so ruling, we believe that the law in this jurisdiction is clear that a party wall agreement can be created by an implied grant as well as by express contract or by statute. The overwhelming authority supports this view.

We also adopt the view in *In re State Fire Marshal, supra,* that appellant and respondents, after the conveyance, each became owners in severalty of the part of the wall situated on their land with a cross-easement of support from the other part. However, these cross-easements for support do not prevent either party from removing his own building without liability for the resulting damage to the other if such party gives proper notice of the removal to the other party and uses reasonable care and caution to protect the wall and remaining building.

There are limitations on the foregoing rule, however, where the wall remaining, after the other part has been demolished, provides no structural support to the remaining building and is merely an interior wall which, when exposed to the elements, will deteriorate and collapse. The latter situation appears under the facts of the case now under consideration as the Frye Hotel garage will remain upright with or without the interior wall.

What are the limitations and specifically what duty does appellant have to protect respondents' interior wall, which remains after the demolition of the other half of the party wall, from the elements where that wall provides no structural support to the remaining building? We think no duty under the facts of the instant case.

In *In re State Fire Marshal, supra,* the court stated as follows at 78:

It is only the fact that the wall is strictly an interior wall and was not intended to protect against the wind and the weather that makes it probable that future damage

could result to the remaining structure unless an exterior wall is provided.

That case is similar to the present one because as here, there was a party wall created by implied grant, a removal of one-half of said wall by one of the parties, leaving an exposed exterior wall standing. The trial court therein ordered the one party to contribute one-half the cost of tiling the exterior portion of the wall remaining and this was reversed on appeal.

In 40 Am. Jur. *Party Walls* § 27 at 501-02 (1942), the following appears:

The fact that the partition wall is thereby left unprotected, exposed, or in an unsightly condition will not affect this rule. Thus, an owner who tears down his house and erects a new building upon his lot not as high as the old structure is not under a duty to protect from rain and snow the portion of a party wall left exposed.

Further, in 2 Thompson on Real Property, § 403 at 629 (1961):

One removing a building is under no obligation to protect a party wall against rain nor is he required to protect the wall by permanently covering it against the elements.

From the aforementioned authorities, it is clear that appellant has no duty to protect respondents' interior wall from the elements. The only duty which appellant must observe is that he exercise reasonable care and caution in removing his wall so as not to add to the unstable condition of the remaining interior wall.

There was no specific finding of fact made by the trial court regarding the reasonableness of appellant's demolition work. However, the trial court in its memorandum opinion did state:

The plaintiff did more here than merely remove the building. He did what he had a right to do, which was to take the wall apart up to the property line, and I think that was reasonably generally done insofar as the location is concerned. And even though he had a right to do so that right is controlled by the law of reasonableness and any removal of this wall's face (as was done, and as

he had a right to do) must be done with reasonableness so that the rights running to the defendant in this wall would not be destroyed.

From our survey of the trial record, it is apparent that appellant gave proper notice of his demolition work to respondents and he did act with reasonable care and caution in demolishing his one-half portion of the party wall. There was no finding of negligence on the part of appellant in his demolition of his one-half portion, and the record indicates that there was none.

In view of the fact that appellant acted in a reasonable and prudent manner and the fact that the remaining wall in no way supports the structure of the Frye Hotel garage, we are faced with the question of whether or not appellant must provide shelter and protection to respondents' interior wall against the elements. As we have indicated, such protection is not favored in the law. Therefore, we conclude that appellant is under no duty or obligation to protect respondents' interior wall against the elements where he has reasonably and carefully removed his one-half portion of the party wall.

We have carefully considered appellant's other assignments of error, but deem it unnecessary to discuss them because of the foregoing which is determinative of the issues in this case.

It is our opinion that the judgment must be reversed and that appellant is entitled to recover damages as prayed for in his complaint. Since the trial court made no findings in this respect, the cause is remanded with instructions to the trial court to find the amount of damages which appellant should be awarded and to enter judgment accordingly. Respondents should also be restrained from maintaining the wall in its present unsafe condition.

The appellant shall recover his costs.

WEAVER, ROSELLINI, HALE, and McGOVERN, JJ., concur.

---

September 3, 1969. Petition for rehearing denied.