4 So.2d 167

**LOUIS PIZITZ DRY GOODS CO. v. PENNEY.**

**6 Div. 783.**

Supreme Court of Alabama.

Oct. 9, 1941.

Borden Burr and Benners, Burr, Mc-Kamy & Forman, all of Birmingham, for appellee.

Wm. S. Pritchard, John D. Hill, David R. Solomon, Leader, Hill & Tenenbaum, Winston B. McCall, and A. W. Jones, all of Birmingham, for appellant.

BROWN, Justice.

This is an action of covenant for breach of warranty against incumbrances embodied in a deed executed by the defendant to the plaintiff on March 4, 1926, conveying to it "The East Half of Lot 16, and the West Half of Lot 17, in Block 98,

604

according to the present plan of Birmingham by the Elyton Land Company; said fractional lots together forming a rectangle fronting 50 feet on the Northern line of First Avenue, North, and extending back Northward 140 feet to the Southern line of First Alley, *together with the buildings and improvements thereon."* (Italics supplied.)

The complaint consists of two counts. The first count avers that at the time of the execution and delivery of said conveyance "the property was encumbered by an easement in favor of the owners of the West Half of Lot 16, in said Block 98, which said easement consisted of the use for ingress and egress of joint stairway erected on both sides of the dividing line between the East Half and West Half of Lot 16, Block 98, aforesaid, and also an easement of support arising out of the fact that *the building* located on the land conveyed by defendant to the plaintiff was constructed in such manner as to support and at the same time deprive [derive] support from the adjoining structure on the West Half of Lot 16, Block 98, that there was, and is no dividing wall between said portions of said structure, but said building is so constructed as that the removal of the structure located on the land conveyed · by the defendant to the Plaintiff would deprive the building on the adjoining land of the support which it now enjoys, and plaintiff avers that by reason of the manner in which said building is constructed, and has been constructed and maintained for more than twenty (20) years, that the owner of the building located on the West Half of Lot 16, Block 98 thereby has an easement of support, and thereby the plaintiff is denied the full sovereignty, control and dominion over the property purchased by the plaintiff from the defendant." (Italics supplied.)

The second count averred that there was a separate building on the two parcels or fractional lots, supported ·by a party-wall on the line between the properties of the coterminous proprietors and a common stairway for the use of both proprietors, otherwise said count was the same as the first.

The defendant pleaded the general issue, in short by consent, with leave to give in evidence matters if specially pleaded would preclude a recovery, and with like leave to plaintiff to reply.

There was a verdict for the plaintiff, followed by motion for new trial by defendant. The court granted the new trial and from that order this appeal is prosecuted.

The evidence is without dispute that the structure on .three fractional lots was a single building under one roof, that it was constructed in 1884 by the then owners, Green and McConnell, Green being the owner of the property with 50-foot frontage and McConnell the other 25-foot frontage fractional lot; that there was a party-wall constructed on the line between the coterminous proprietors, one phase of the evidence being to the effect that the wall was 13 inches thick, 10 inches on Green's side and 3 inches on McConnell's; another phase of the evidence was the wall was a 17-inch wall with 7 inches on the McConnell lot. The stairway led from the street entrance to the second floor, was approximately two-thirds on Green's lot and one-third on McConnell's. This stairway led into a seven foot hallway, from which there was a separate stairway to the third floor on each side, supported by the studded walls forming the hallway. The joists or girders over the first story rested on the side walls and the party-wall which did not rise above the ceiling over the first floor. The rooms on the first floor, as the evidence tends to show, were constructed for use as stores, and the second and third floors for rooming house. There are slight tendencies in the evidence that the rooms on the second floor, at the time of the sale and conveyance of the Green property to the plaintiff, were usable for rooming purposes and the plaintiff rented some of the rooms, availing itself of the stairway as a means of ingress and egress for its tenants.

The plaintiff adduced the testimony of expert realtors going to show that the common · stairway and party-wall was a detriment affecting the market value of the property from 10% upward. The verdict assessed plaintiff's damages at 10% of the price plaintiff paid for the property, $13,-500.

The defendant's evidence shows that the entire property, including the McConnell fractional lot was acquired and owned by one Thomas from whom defendant purchased the fractional lots formerly owned by Green. Thomas still owns the other fractional lot. The defendant's evidence further goes to show that the building was

poorly constructed, that lime and sand mortar was used in construction, that the walls were not tied together, and all the weight of the building rested on the side walls and the party-wall. The roof of the entire structure rested on the joists supporting the second floor. Time and exposure of one of the outside walls had rotted and eroded the mortar so that it could be picked out with a common lead pencil. The front wall had parted from the roof at the third and second floors, was leaning toward the street, bulged in the center, and was dangerous and liable to fall. Termites and dry rot had ravaged the stringers to the stairways; the one leading from the first to the second floor had dropped down on one side and some of the steps or treads had apparently been pulled off and used for kindling by tramps and other mendicants who constantly inhabited the second floor, sleeping on old dirty mattresses, in squalor and filth. The steps or treads on the stairways from the second to the third floor had rotted from the rains coming through the roof and the stringers were in dangerous condition of decay. The party-wall in the rear for a distance of thirty feet had fallen down. That the defendant had been notified by the city authorities of Birmingham that the place was dangerous and that he would have to repair or rase the building. That the building was worthless for the purposes for which it was constructed, and only had a small value for material that might be salvaged in tearing it down.

The evidence also goes to show that the property was purchased for the purpose of tearing away the building and using the lots for rebuilding.

The evidence also shows that the property purchased by plaintiff was sold to Sokol Brothers who reconstructed the part of the building on the Green lot, and the lot with 25-foot frontage at the time of the trial was vacant and is being used for a parking lot.

The question of controlling importance presented on the trial, was, is said stairway and party-wall in its condition at the time of the conveyance an incumbrance on the title conveyed by the deed?

There was not, as a matter of law, an easement attached to and running with the land.

■ "An easement has been defined as a liberty, privilege or advantage *in land without profit,* existing distinct from the ownership of the soil." 9 R.C.L. 735, § 2; 17 Am.Jur. 923, § 2; Tuskegee Land & Security Co. v. Birmingham Realty Co., 161 Ala. 542, 49 So. 378, 23 L.R.A.,N.S., 992. (Italics supplied.)

■ "The essential qualities of easements are: first, they are incorporeal; second, they are imposed upon corporeal property; third, they confer no right to a participation in the profits arising from such property; fourth, in the case of an appurtenant easement there must be two distinct tenements, the dominant to which the right belongs, and the servient upon which the obligation rests." 9 R.C.L. 735, § 3; 17 Am.Jur. 925, § 3.

■ The rights created by the joint construction of the building by the coterminous proprietors created a mutual right of user in the stairway, and hall on the second floor, and in the party-wall, for the common benefit of both. Graves v. Smith, 87 Ala. 450, 6 So. 308, 5 L.R.A. 298, 13 Am.St.Rep. 60.

■ As observed in the cited case: "Where such a wall is erected, one-half on the land of each adjoining proprietor, it does not render them tenants in common, but each is the owner in severalty of his part, both of the wall and the land on which it stands; but the title of each is qualified by a cross-easement in favor of the other, which entitles him to support his building by means of the half of the wall belonging to his neighbor."

■ The cross-easements here were in the stairway, hall and party-wall, and exist for the life of the building for the purposes for which it was constructed, imposing on the respective proprietors the duty to maintain and keep in repair, with the right of the other to repair and compel contribution. Therefore, if through failure to repair, the ravages of pests or the erosion of time and the elements, these facilities become so dilapidated that they were not usable for the purpose for which they were intended, the law would imply an abandonment and a termination of the right of user. The question of abandonment ordinarily is a question of fact and for jury decision. 17 Am.Jur. 1023, 1026, §§ 137, 142; Antomachi's Executor v. Russell, 63 Ala. 356, 35 Am.Rep. 40; McKenna v. Eaton, 182 Mass. 346, 65 N.E. 382, 94 Am.St.Rep. 661.

■ The right of user here involved being mutual is incapable of adverse pos-

session as against one or the other of the coterminous proprietors and is therefor not subject to the doctrine of prescription. Gaynor v. Bauer, 144 Ala. 448, 39 So. 749.

It is a familiar principle that if the title in fee to all the parcels of the property be vested in one individual or owner, all rights are merged in the title in fee, terminating subordinate easements or right of user. 9 R.C.L. 808, § 64; 17 Am.Jur. 926, § 3; 17 Am.Jur. 1024, § 139.

Our judgment is that the great weight of the evidence shows that the building was in such dilapidated condition as to show an abandonment of the uses of the stairway and the party-wall, and that the right or license for its use had terminated by abandonment.

Affirmed.

GARDNER, C. J., THOMAS, and LIVINGSTON, JJ., concur.