IN RE CONDEMNATION BY THE STATE FIRE MARSHAL. FIRST INVESTMENT COMPANY, APPELLANT, V. STATE FIRE MARSHAL OF THE STATE OF NEBRASKA, APPELLEE, ETHEL S. LOWE ET AL., INTERVENERS-APPELLEES.

120 N. W. 2d 549

Filed March 15, 1963. No. 35377.

Mitchell, Taylor & Beatty, for appellant.

Robert A. Munro, for appellee.

Ward W. Minor, for interveners-appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is a condemnation action brought by the State

Fire Marshal against the First Investment Company to condemn a portion of a building in the city of Kearney, Nebraska. The trial court entered judgment that the First Investment Company either repair or demolish its portion of the building, and if it demolishes it, that it be required to pay one-half the cost of erecting a tile wall from the first floor ceiling to the roof. First Investment Company perfected an appeal to this court.

Prior to February 14, 1914, W. T. Scott and Theodore W. Bolte were each the owner of an undivided one-half interest in Lot 115 and the south half of Lot 116 in the original town of Kearney Junction. At that time, a two-story building, which had been erected in 1887, was on the property. The east half and the west half of the building were separated by a 12-inch brick or masonry wall from the basement through the first floor to the ceiling of the first floor. This wall is stipulated to be on the dividing line between the east half and the west half of the building. The second floor was divided by a two by four wood partition that was lathed and plastered. This gave a 5-inch lathe and plaster partition over the brick division wall through the second floor to the roof. This partition was entirely on the portion of the wall situated on the west half of the building, being approximately $\frac{1}{2}$ inch at its south end to $1\frac{1}{2}$ inches at its north end west of the west property line of the east half of the building.

On February 14, 1914, W. T. Scott and Theodore W. Bolte divided the premises by cross-deeds. The east half of said property was conveyed to Scott and the west half was conveyed to Bolte. These conveyances accomplished the severance of the joint tenancy, and whatever rights of easement which have existed with respect to the dividing walls took their rise and form in this transaction. These properties will hereinafter be referred to as the east half and the west half.

The two properties have remained separated since that time, and the respective titles have been conveyed

on several occasions. In 1945, Ethel S. Lowe and Stephen G. Lowe, hereinafter referred to as Lowes, became the owners of the west half. On November 6, 1959, the First Investment Company, hereinafter referred to as Company, became the owner of the east half.

On February 12, 1962, the State Fire Marshal, pursuant to sections 81-513 and 81-515, R. R. S. 1943, filed an order in the district court for Buffalo County, directing that the east half of the building situated on Lot 115 and the south half of Lot 116 in the original town of Kearney, be either demolished or repaired.

The Company admitted the dilapidated condition of the east half of the building, and alleged that the Lowes claimed some interest in the building by virtue of a party wall. The Lowes, by answer and cross-petition, alleged that because of the absence of a proper supporting wall, demolition of the east half of the building could not be accomplished without causing irreparable damage to the part of the structure owned by them. They then prayed that any order of demolition first require the construction of a proper supporting wall between the structures at the cost of the Company, and that the order further provide for damages.

At the trial, the Company stipulated that it wished to comply with the portion of the order of the State Fire Marshal requiring the east half of the building to be demolished. It was also stipulated that the brick wall running from the basement to the second floor was on the dividing line between the properties and is not included in the condemnation.

After a hearing and an inspection of the premises by the court, a judgment was entered directing the Company to make the repairs required or to start demolishing the east half of the building within 30 days, and if it fails to do so, directing the State Fire Marshal to demolish said building, as provided in section 81-519, R. R. S. 1943. The judgment provided that said demolition should be done in such a manner as not to disturb the

wall now between said building and that of the Lowes, but permitting the Company to remove the east wall of a closet in the north room on the second floor which extended into the east half of the premises. The judgment further directed that the Lowes should build a tile wall from the top of the brick wall between the buildings through the second floor to the roof, and that the Company should pay one-half of the cost thereof.

The Company perfected its appeal to this court, alleging substantially that in the absence of a specific agreement the owner of one part of a divided building has no obligation to repair or improve his part of the building for the benefit of the owner of the other side, and further that in any event he is not responsible for the cost of extending the wall unless he is using the extension.

There is no question in this case involving the brick partition extending from the basement floor to the first floor ceiling. The wall in question is the lathe and plaster wall resting on the brick partition wall dividing the second story of the building. It extends through the second floor to the roof, and all of it is on the west half of the premises, or the portion owned by the Lowes.

The severance of the premises in 1914 by the common owners made the walls dividing the premises party walls. The record does not indicate the grant of an easement in express terms in those conveyances, yet because an easement is necessary for the enjoyment of the estate conveyed, an implied grant is constructively implied in the conveyance. See, Union Nat. Bank of Lowell v. Nesmith, 238 Mass. 247, 130 N. E. 251; 3 Tiffany, Real Property (3rd Ed.), § 779, p. 253. The conveyance of a thing imparts a grant of it as it actually exists at the time the conveyance is made, unless the contrary intention is manifested in the grant. Znamanacek v. Jelinek, 69 Neb. 110, 95 N. W. 28, 111 Am. S. R. 533.

It is the actual existence of the wall as a part of both portions of the building from which the grant and reser-

vation of a party wall must be implied. The land cov-ered by the wall is the several property of the owner of the portion on which it stands, yet the title of each is qualified by the easement to which the other is entitled. See cases cited in note 47, 2 Thompson on Real Property (Perm. Ed.), § 627, p. 251. We said in Shiverick & Co. v. Gunning Co., 58 Neb. 29, 78 N. W. 460, that owners of a party wall are not tenants in common, but each owns in severalty the part thereof situated on his own land, with an easement of support from the other part.

It makes no difference to a decision herein whether the division wall has become a party wall by the implied grant, as we here determine, or by prescription, as contended by the Lowes. It has been used and enjoyed in common by the various owners of both buildings for almost 50 years. For the purposes of discussion herein, we determine the lathe and plaster wall to be a party wall to the extent of the use practiced during such period. This lathe and plaster wall, which hereinafter will be referred to as the wall, is strictly an interior wall. It is entirely on the west half, and so is owned by the Lowes subject to a support easement in favor of the Company. The removal of the east half will expose the wall to the elements, and, unless an exterior wall is provided, damage will result to the structure. Consequently, the easement claimed by the Lowes against the east half, while referred to by them as one of support, is essentially one of protection or shelter.

Party wall rights usually originate in a contract, and their duration under such circumstances obviously depends on the intention of the parties as determined from the contract. Here, however, we do not have a contract but an implied grant or easement, and our problem is to determine the duration of an implied grant under the facts of this case. Is it as equally obvious that an implied grant should not be carried beyond the limits fairly and reasonably to be contemplated when the im-

plied grant is made? Is that what the parties can be presumed to have intended?

In 1914, when the ownership of the building was separated, the building had been standing for 27 years. In 1962, when the State Fire Marshal started these proceedings, the building had been in existence for 75 years. Does the law presume the intention to be that an implied grant creates a perpetual easement? The term perpetual is one of infinite duration. Does it run into eternity? The answer seems implicit in the question when it is put in this form.

The law of decay is inexorable. Nothing can escape it. Sooner or later the time will even come when the brick wall, which is not here involved, will be so deteriorated as to require replacement or demolition. Here, through the failure to repair and the erosion of time, the east half of the building became so dilapidated that it was no longer usable for the purpose intended. The evidence indicates repair was inadvisable and demolition appeared to be the obvious answer. The judgment of the trial court, however, gives the option, and decrees repair or demolition.

Suppose, for the purpose of discussion, although the record does not support it, the Company, which acquired its interest in 1959, and its predecessors in interest, could be charged with willful neglect to repair its portion of the building. To answer this supposition, it should first be conceded that there is an obligation on each owner to use his own property so as not to injure his neighbor. However, can it be maintained from this obligation that the right of support and shelter to which each is entitled, and which may not be taken away by the wrongful act of the other owner, imposes also the affirmative duty to repair the premises and to maintain the existing condition of things? Unless this is so, the judgment of the trial court herein cannot be sustained. There is no question that if a contract right were involved, one owner would not be permitted to defeat an

easement by his failure to repair. Barr v. Lamaster, 48 Neb. 114, 66 N. W. 1110, 32 L. R. A. 451. This, however, is not the present situation because we are concerned not with a contract right but with an implied easement.

Generally, the easement of support of adjoining buildings by the party wall ordinarily ceases when the wall ceases to exist, or is accidentally destroyed, or has been made unfit for its purpose by accident or age, or has become so decayed as to require rebuilding from the foundation. Similarly, when the buildings are accidentally destroyed, the easement ceases. See 69 C. J. S., Party Walls, § 11b, p. 8.

In Bowhay v. Richards, 81 Neb. 764, 116 N. W. 677, 19 L. R. A. N. S. 883, we adopted the rule first enunciated in Sherred v. Cisco, 4 Sandf. (N. Y.) 480, that a destruction of the building destroyed the easement. In that case, we said: "Where a wall is entirely upon the property of one party, the right of an adjoining owner to have support therefrom, whether derived from contract or acquired by prescription, is in the nature of an easement, which is terminated upon the destruction of the building by fire." This is the general rule where the destruction is by accident or casualty.

Jackson v. Bruns, 129 Iowa 616, 106 N. W. 1, 3 L. R. A. N. S. 510, is an interesting case on the subject of repair. It held the owner of the second story of a building had no equitable right to compel the owner of the first story to keep the foundation and walls of the first story in repair for the purpose of furnishing continuing support to the second story in the absence of any express or implied contract on the part of the owner of the first story to keep the walls in such repair. We quote the following from that case: "The owner of one portion of a building cannot recover damages against the owner of another portion (in the absence of any contractual relation between them giving rise to a duty on the part of the latter to keep his portion of the prem-

ises in repair) for damages resulting from the failure to make repairs. .Cheeseborough v. Green, 10 Conn. 318 (26 Am. Dec. 396); Pierce v. Dyer, 109 Mass. 374 (12 Am. Rep. 716). Nor can the owner of one portion compel the owner of another portion to contribute to or bear the expense of making necessary repairs. Loring v. Bacon, 4 Mass. 575; Ottumwa Lodge v. Lewis, 34 Iowa 67. In Campbell v. Mesier, 4 Johns. Ch. (N. Y.) 335, (8 Am. Dec. 570) the equitable right to contribution is upheld; but that case has not been followed, in New York or elsewhere. In the case of a party wall it has been held that either owner may repair or replace (Schile v. Brokhahus, 80 N. Y. 614), but that neither one is bound to repair for the purpose of protecting the property of the other. Colebeck v Girdlers Co., 1 Q. B. D. 234."

Cross-easements in a stairway, hall, and party wall erected by the joint construction of a building, were involved in Louis Pizitz Dry Goods Co. v. Penney, 241 Ala. 602, 4 So. 2d 167. In that case, the court held that if such facility became so dilapidated as to be no longer usable for the purposes for which it was intended, the law would imply an abandonment and termination of the right of the user. The Company, by admitting the dilipidated condition of the building and agreeing to condemnation, indicated a clear intent to abandon any easement it might have.

Partridge v. Gilbert (1857), 15 N. Y. 601, 69 Am. Dec. 632, cited in Bowhay v. Richards, 81 Neb. 764, 116 N. W. 677, 19 L. R. A. N. S. 883, involved two brick dwelling houses erected in 1794 with a common wall, each of which, by subsequent conveyances, was acquired by separate owners. That case held: "When one of the buildings thus supported becomes so dilapidated as to be unsafe and unfit for occupation, and the removal of the front and rear walls of such building, with the floors and beams, would occasion the destruction of the whole wall, the owner of such building may, upon rea-

sonable notice to the tenant of the adjoining building, lawfully take down the whole wall; and if he occupy no unnecessary time in completing the work, and use proper care and skill in its execution, is not responsible to the tenant of the adjoining building for damages resulting from its exposure to weather, from loss of business or inability to let the upper lofts.

"It seems that the easement of each proprietor in the tenement of the other ceases with the existence of the state of things which had created it, and that there is no right in either, in case the other refuses to cooperate, to rebuild the wall and claim contribution."

The following observations in Partridge v. Gilbert, *supra,* by Denio, Chief Justice, a portion of which is set out in Bowhay v. Richards, *supra,* are of interest here: "In a case which was determined in the Superior Court of New York, that court held that the mutual easement ceased with the destruction of the buildings and the wall by fire, and that the respective parties were remitted to their original unqualified title to the division line. (Sherred v. Cisco, 4 Sandf. S. C. R., 480.) I do not perceive any solid distinction between a total destruction of the wall and buildings, and a state of things which should require the whole to be rebuilt from the foundation. In either case there is great force in saying that the mutual easements have become inapplicable, and that each proprietor may build as he pleases upon his own land, without any obligation to accommodate the other. Circumstances may have materially changed since the adjoining proprietors were content with such walls as would have supported two adjoining dwellings. If the right of mutual support continues, by means of the original arrangements, or by prescription, it is for just such an easement as was originally conceded, or which has been established by long enjoyment. But in the changing condition of our cities and villages, it must often happen, as it did actually happen in this case, that edifices of different dimensions, and an entirely differ-

ent character, would be required. And it might happen, too, that the views of one of the proprietors, as to the value and extent of the new buildings, would essentially differ from those of the other; and the division wall, which would suit one of them, would be inapplicable to the objects of the other." . . . .

The nature, extent, and duration of the easements or servitudes imposed by implication on the two estates are not too well defined in the reported cases, but it does seem clear that there is no obligation to repair where the grant is an implied one.

A case which is very analogous to the instant one because of the condemnation feature is McKenna v. Eaton (1902), 182 Mass. 346, 65 N. E. 382, 94 Am. S. R. 661. This case involved a double house. The city board of health ordered the destruction of the half belonging to Eaton. Eaton, pursuant to the order, demolished his half, leaving no support or shelter to McKenna. McKenna brought action against Eaton for damages for the removal, without replacing the support and shelter which came from Eaton's house. In a decision by Holmes, Chief Justice, the court held that although McKenna had rights against Eaton, in the event of a voluntary destruction of the support furnished by the house torn down, he could not recover where the act was done under the valid direction of the board of health. The court said: "* * * we are of opinion that the plaintiff's rights were at an end, and that he stood no differently when the superior power by which the defendant's building was removed was the law, than he would have stood if it had been fire or an earthquake or time. It is decided that the defendant would not have been liable for a failure to keep his house in repair, even if the omission was with a design to harm the plaintiff. Pierce v. Dyer, 109 Mass. 374. Adams v. Marshall, 138 Mass. 228, 234. In Pierce v. Dyer it was intimated that if the houses were destroyed by the action of the elements the respective easements would be at an end. 109 Mass. 377.

That plainly is the law in the analogous case of party walls. Heartt v. Kruger, 121 N. Y. 386. Hoffman v. Kuhn, 57 Miss. 746. Antomarchi v. Russell, 63 Ala. 356. Jones, Easements, § 709. It is true that these cases of destruction have been cases of destruction of the whole wall, but the same principle would apply to a destruction of a half, if it were possible, as is shown by Pierce v. Dyer."

It may be suggested that in the instant case the Company was given an option by the trial court to repair or demolish. It is a distinction without any legal difference. If one party does not desire to restore his building to a safe and sound condition for his own benefit, he should not be compelled to maintain it for the benefit of another in the absence of a specific agreement. Certainly then, he should not be required to provide an exterior wall where none existed previously and which wall will be a definite improvement of the remaining property.

The following from Calmelet v. Sichl, 48 Neb. 505, 67 N. W. 467, 58 Am. S. R. 700, which involved a dispute over the extension of a party wall and the erection of a fourth story, is pertinent on this point: "That courts have no power, however, to enlarge contract rights of parties requires no citation of authority to establish. It is, moreover, very clear that an easement for one purpose established by mere user cannot, by legal intendment, be extended to another purpose."

Essentially, we are here determining whether there is any duty on the Company to preserve its building for the protection of the party wall. Stated more generally, do the owners of a party wall have reciprocal easements of support from each other's building? A distinction is made in the cases between the removal of the wall itself and the rest of the building, which is the situation in the instant case. In that latter instance, the authorities generally hold that a coowner of a party

wall is not required to preserve his building for the sake of the party wall. See, Annotation, 9 A. L. R. 1329, as well as Annotation, 85 A. L. R. 288, covering a change in conditions as terminating party wall agreements on easements. We believe the rule to be that the owners of a party wall do not have a reciprocal easement of support from each other's building, but either of them may remove his own building without liability for the resulting damage to the other, providing he gives proper notice of removal and uses reasonable care and caution to protect the wall and remaining building. Clearly then, when the action is instituted by the State Fire Marshal for the protection and welfare of society, there should be no question about the right to remove without liability.

The fact that in the instant case the east half of the building can be wholly removed without damage to the west half should not be ignored. The removal of the east half will not require the removal of any part of the second floor wall. It is only the fact that the wall is strictly an interior wall and was not intended to protect against the wind and the weather that makes it probable that future damage could result to the remaining structure unless an exterior wall is provided. The Lowes had notice of and are parties to this action of condemnation. Their witness testified that the tile wall ordered by the trial court would provide ample protection to the second story of their building. This tile wall is solely for the benefit of the Lowes, and we are unable to find any reason, certainly no legal reason, why the owner of the east half, whose building is being ordered removed, should be required to contribute in any way to the cost of the tile wall. We therefore determine that the removal of the Company's portion of the building pursuant to an order of condemnation creates no obligation on its part to provide future protection for an interior division wall which became an exterior wall for the portion of the building remaining.

For the reasons given, the judgment of the trial court is reversed and the cause is remanded with directions to enter a judgment in conformity with this opinion.

REVERSED AND REMANDED.