DANIEL COVERT, SR., AND JERRY C. HIGGINS AND MYRNA F.
HIGGINS, HUSBAND AND WIFE, APPELLEES, V. MARY L.
RICHARDS, APPELLANT.

535 N.W.2d 701

Filed July 7, 1995. No. S-93-889.

Richard W. Harter, of Harter Law Office, P.C., for appellant.

William R. Reinsch and Linda Frederick Thompson, of Reinsch & Slattery, P.C., for appellees.

CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and BOSLAUGH, J., Retired.

PER CURIAM.

The district court enjoined the defendant–appellant, Mary L. Richards, from eliminating the leaks in the flat roof on her building by constructing a pitched roof and gutter system resting on half of the party walls separating her building from the flat-roofed buildings adjoining on either side of it, one owned by the plaintiff–appellee Daniel Covert, Sr., and the other by the plaintiffs–appellees Jerry C. Higgins and his wife, Myrna F. Higgins. Richards appealed to the Nebraska Court of Appeals, claiming that the district court erred in so ruling. We then, on our own motion, removed the matter to this court in order to regulate our caseload and that of the lower appellate court.

We begin by noting that at the commencement of this litigation, Ludovina T. Brady, who owned the middle building as a joint tenant with Richards, was also named a defendant; however, Brady has since died, and the parties stipulated that the action survives in Richards alone.

We have written that the owners of a party wall are not tenants in common, but that each owns in severalty the part thereof situated on that owner's land and has an easement of support from the other part of the wall. See *First Investment Co. v. State Fire Marshal*, 175 Neb. 66, 120 N.W.2d 549 (1963).

In *First Investment Co.*, an interior second–floor wall entirely on the Lowes' side of First Investment's property line separated a building into two parts. One part of the building was owned by First Investment, and the other part was owned by the Lowes. We held that in the event that the part owned by First Investment was to be demolished because of decay as ordered by the fire marshal, First Investment had no obligation to share in the cost of resurfacing what had been an interior party wall so as to make it suitable as an exterior wall. In so holding, we reasoned that as the reciprocal easements arose by implication, the owners had the right of support from the wall, but not from each other's building. Thus, First Investment was not obligated to preserve its building for the sake of the party wall, and once First Investment demolished its portion of the building, the party wall would serve solely the interests of the Lowes.

In *Calmelet v. Sichl*, 48 Neb. 505, 67 N.W. 467 (1896), the commissioner ruled that the contiguous proprietor who had a "mere" easement of support in a party wall located on a neighbor's property did not have a right to extend the wall upward. In so ruling, the commissioner reasoned that the fact that the parties had agreed to the contiguous proprietorship of the three–story wall "did not justify one of these parties in putting up the fourth story in his own right, for his own benefit, and in open hostility to the wishes of the other joint [partner]." *Id.* at 512, 67 N.W. at 469.

The situation here differs from those presented in *First Investment Co.* and *Calmelet* in that the record does not tell us on whose land or lands the subject walls rest. The situation at hand further differs from that presented in *Calmelet* in that here there is no allegation of a contract concerning the ownership of the walls, and also differs from that in *First Investment Co.* because there is no proof of prior common ownership. Nonetheless, since the parties herein stipulated to the party wall relationship, we are persuaded that in the absence of proof of a

contract which provides otherwise, and irrespective of whether a party wall straddles boundary lines or rests entirely upon the land of one of the contiguous proprietors,

> [a] party wall is for the common benefit of contiguous proprietors. Neither may subject it to a use whereby it ceases to be continuously available for enjoyment by the other . . . . Each may subject it to whatever uses are proper to a wall, if the like freedom of the other is not curtailed thereby.

*Varriale v. Brooklyn Edison Co.*, 252 N.Y. 222, 224, 169 N.E. 284 (1929).

In that case, the defendant had built a large electric sign weighing $2^{1}/_{2}$ tons with iron beams resting on the top of the party wall and spanning its entire width. In affirming an injunction, the *Varriale* court wrote in 252 N.Y. at 225–26, 169 N.E. at 284–85:

> We think the sign complained of subjects the wall to a use for the benefit of one owner whereby it ceases to be continuously available for enjoyment by the other. There has been an exclusive appropriation, which, so long as it is suffered, will make equal use impossible. The beams laid across the capstone, and covering the whole wall, even the plaintiff's half, have no relation to any use that can be common to the two proprietors. On the contrary, the beams will have to be removed and the structure torn down if the plaintiff has occasion at any time to build the wall higher, as she is privileged to do. . . .
>
> . . . A privilege so valuable is not to be appropriated by a strong hand, but should be acquired, if at all, through treaty and consent. The defendant has no more right to place its beams upon a wall located on the plaintiff's land than it would have to project them without consent across the open space beyond.

See, also, *Fidelity Lodge, etc., of New Castle, Ind., v. Bond*, 147 Ind. 437, 45 N.E. 338 (1896).

Although Richards' plan calls for resting the roof and gutter system only on the half of the party walls facing her building, the plan would nonetheless subject the walls to a use which benefits only her and which would have no relation to any party

wall use that could be common to the other contiguous proprietors.

The judgment of the district court is affirmed.

AFFIRMED.

WHITE, C.J., participating on briefs.