[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 569 
Tommy Garrison and Carolyn Norris ("the purchasers") appeal from a summary judgment entered by the Walker County Circuit Court in favor of Alabama Power Company ("APCo") on their trespass claims. We reverse and remand.
In March 2000, the purchasers sued APCo, asserting, among other things, that APCo had erected and maintained electricity-transmission wires and supporting guy wires and structures on land owned by the purchasers, that APCo had caused the removal of approximately 30 trees from their land, and that those actions amounted to trespasses to their land. The purchasers sought a damages award of $5,000, as well as ancillary injunctive relief. APCo filed a motion for a summary judgment, supported by the affidavit of APCo's senior division real estate agent and by the affidavit of a co-owner of Paden Young Holdings, the company from whom the purchasers were buying their land through a lease-sale contract; APCo later filed an affidavit given by the president of Blue Creek Land Company ("Blue Creek"), Paden Young's contractual predecessor. The purchasers filed a response in opposition to APCo's motion, relying upon their own affidavits, and filed an amended complaint that more particularly specified the nature of their interests in the subject land. APCo filed a reply to the purchasers' response, but did not adduce any further evidence. The trial court subsequently entered a summary judgment in favor of APCo as to all claims, prompting the purchasers' appeal to this court.[1]
It is well settled under Alabama law, that the party moving for a summary judgment "has the burden of showing the absence of any genuine issue as to all material facts, which, under the applicable principles of substantive law, [entitle] it to a judgment as a matter of law." Fox v.Title Guar. Abstract Co., 337 So.2d 1300, 1303 (Ala. 1976). In Cremeensv. City of Montgomery, 779 So.2d 1190, 1191 (Ala. 2000), our Supreme Court recently summarized the standard of review applicable to a ruling on a motion for a summary judgment:
 "When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Substantial evidence is evidence of such weight and *Page 570 
quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Moreover, a court may not determine the credibility of witnesses on a summary judgment motion." (Citations and internal quotation marks omitted.)
Before we apply these principles of appellate review, it is appropriate to review the applicable substantive law. We note that "[t]respass has been defined as any entry on the land of another without express or implied authority, and a structure maintained on another's property is a continuing trespass." Cove Props., Inc. v. Walter Trent Marina, Inc.,796 So.2d 322, 326 (Ala.Civ.App. 1999) (citations and internal quotation marks omitted), aff'd in pertinent part, 796 So.2d 331 (Ala. 2000). Of course, authority to enter lands titled to another may arise from an easement. E.g., Louis Pizitz Dry Goods Co. v. Penney, 241 Ala. 602,4 So.2d 167 (1941). In the specific area of utility easements, our Supreme Court has stated:
 "It is settled law that the right of easement carries with it the right of a utility company to construct and maintain its facilities upon and over the property within the confines of the easement, unless the exercise of this right is so arbitrary as to unnecessarily and unreasonably interfere with the owner's right of reasonable use of his own property."
M M Inv. Co. v. Regency Oaks Apts., 517 So.2d 591, 596 (Ala. 1987).
According to the exhibits attached to the two affidavits submitted by APCo in support of its summary-judgment motion, the purchasers entered into a lease-sale agreement with Blue Creek on June 22, 1994, whereby the purchasers agreed to make a down payment of $1,500 and 72 monthly payments of $120.44 in exchange for the right to occupy a particular parcel of land in Walker County; upon fulfillment of the payment terms, Blue Creek agreed to deed the property to the purchasers.[2] By an instrument dated February 9, 1994, Blue Creek had conveyed to APCo "the right to construct, operate and maintain its lines of poles and appliances necessary in connection therewith, as located by the final location drawing heretofore made by [APCo] . . . upon, over, under and across" a parcel of property identified on a particular attached "Exhibit A." Although APCo's senior division real estate agent testified in his affidavit that the easement was "for the property made the basis of the" purchasers' lawsuit, "Exhibit A" to the instrument conveying an easement to APCo was a copy of an entirely different lease-sale agreement that contained a legal description of the parcel that adjoined the purchasers' parcel on the west.
The purchasers, in their affidavits, testified that APCo did not have a written easement across the purchasers' property, that the instrument relied upon by APCo conveyed an easement across land other than their parcel, that the purchasers had not agreed to allow APCo to use any portion of their property to place or maintain power poles, and that the president of Blue Creek had given them a survey that he said "listed any easements" on the property. The survey, which is dated June 20, *Page 571 
1994 (two days before the purchasers' lease-sale contract), and which was attached as an exhibit to the purchasers' affidavits, shows no power poles or lines, yet contains the licensed surveyor's statement that
 "there are no right of ways, easements o[r] joint driveways over or across said lands visible on the surface except as shown, that there are no electric or telephone wires (excluding those . . . on the premises only) or structures or supports thereof, including poles, anchor or guy wires on or over said property, except as shown."
According to the purchasers' affidavits, and the exhibits thereto, APCo placed three power poles on the purchasers' property, alongside their private driveway, by mistake.
APCo first contends that the power poles are not located on the purchasers' property. APCo contends that the express easement conveyed to APCo by Blue Creek gives APCo an easement across the parcel adjacent to the purchasers' parcel and that that adjacent parcel is where the power poles are, in fact, located. To support this argument, APCo contends that the survey, which was dated June 20, 1994, two days before the purchasers executed their lease-sale contract, and which states the absence of any visible rights-of-way, electric wires, or power poles on that date, was prepared after the installation of the power poles complained of by the purchasers. In this regard, APCo also relies upon the allegation in the plaintiffs' complaint that APCo's "trespass was initiated on or about June 15, 1994." Although there is no evidence concerning precisely when APCo's power poles were installed,[3] APCo argues, based on the foregoing, that it is undisputed that the power poles were installed prior to the preparation of the survey and that, therefore, the survey conclusively illustrates that the power poles are not located on the purchasers' property.
While the complaint states that the trespass was "initiated" on or about June 15, 1994, there is no allegation as to what "initiated" means. Other than the survey itself, there is no evidence of the condition of the subject property at the time the purchasers entered into their lease-sale contract. There may be any number of "initial" steps preliminary to the preparation or use of an easement (i.e., short of actual installation of poles) that would not necessarily make such an easement apparent or "visible" to a surveyor completing his field work on or before June 20, 1994. Moreover, the purchasers introduced affidavits and attached exhibits indicating that three APCo power poles currently
are located on the purchasers' property.[4] The finder of fact could conclude that the purchasers' evidence, including the survey, collectively stands for the proposition that the three APCo power poles (or other evidence of an APCo easement that would be visible to a surveyor) were first placed on the purchasers' parcel after the survey was performed in June *Page 572 
1994, but before this action was commenced in March 2000. Thus, we cannot affirm the summary judgment on the basis that no genuine issue remains as to whether the power poles are located on the purchasers' land.
APCo also contends that the purchasers' claims are barred as a matter of law, because, APCo says, the purchasers' lease-sale contract stated that they would take the property "subject to the right of way granted to [APCo]" and subject "to all reservations, restrictions and easements of record or in evidence through use." While we agree that this language from the purchasers' lease-sale contract would be sufficient to put the purchasers on notice of an easement, if one existed, such language obviously does not, itself, create such an easement. Rather, this language merely begs the underlying factual issue: did an easement exist? In Camp v. Milam, 291 Ala. 12, 277 So.2d 95 (1973), our Supreme Court explained that "an easement can be created in only three ways: by deed; by prescription; or by adverse use for the statutory period."291 Ala. at 17, 277 So.2d at 98. See Boykin Family Trust v. Boykin,661 So.2d 245, 250-51 (Ala.Civ.App. 1995).[5] There is no allegation that APCo has obtained an easement by prescription or adverse use in this case. Nor is there any evidence of a deed granting an easement to APCo across the land in question. We also note that an easement is an interest in land:
 "`The term "easement" connotes an incorporeal right "imposed on corporeal property." . . . "An easement, although an incorporeal right, . . . is yet properly denominated an interest in land, . . . and the expression "estate or interest in land" is broad enough to include such rights; for an easement must be an interest in or over the soil.'"
Boykin, 661 So.2d at 250 (quoting West Town Plaza Assocs. v. Wal-MartStores, Inc., 619 So.2d 1290, 1295 (Ala. 1993) (citations omitted)). Accordingly, any agreement to convey an easement must comply with the Statute of Frauds. Ala. Code 1975, § 8-9-2(5). See also Ala. Code 1975, § 35-4-20. The purchasers testified in their respective affidavits that APCo was never conveyed an easement across their parcel; the only evidence of a conveyance was a deed from Blue Creek to APCo conveying an easement across the parcel of land adjoining the purchasers' land.
APCo particularly emphasizes the exception in the purchasers' lease-sale contract for easements "in evidence through use" and argues that the easement in question was evident. Again, before an easement can be "in evidence through use," there first must be an easement.[6] For the reasons discussed immediately above, a genuine issue of fact remains in this case with regard to whether such an *Page 573 
easement exists. Likewise, as previously discussed, there also remains a genuine issue of fact as to whether there was any easement "in evidence through use" at the time purchasers entered into their lease-sale contract.
Having reviewed the facts and the pertinent legal authorities, we reverse the summary judgment in favor of APCo, and we remand the cause for further proceedings.
REVERSED AND REMANDED.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Thompson, J., concurs in the result.
[1] The parties' Alabama Litigation Accountability Act cost and attorney-fee requests were denied sub silentio by the trial court. SeeDonnell Trucking Co. v. Shows, 659 So.2d 667, 669 (Ala.Civ.App. 1995).
[2] Paden Young succeeded to Blue Creek's interest in the lease-sale contract in January 1995.
[3] In their respective affidavits, executed on May 25, 2000, the purchasers testify only that the power poles have been on their property "for less than 7 years."
[4] We reject the proposition advanced by APCo that the purchasers' affidavits and exhibits concerning the location of the power poles on their property are "unsupported and conclusory statements" that cannot be considered in reviewing the summary judgment, because (1) APCo did not file a motion in the trial court to strike those affidavits (see Golsonv. Montgomery Coca-Cola Bottling Co., 680 So.2d 304, 306 (Ala.Civ.App. 1996)), and (2) declarations of owners and possessors of land are competent evidence under Alabama law concerning the location of land boundaries (see Aiken v. McMillan, 213 Ala. 494, 503, 106 So. 150, 159
(1925)).
[5] Citing R. Powell, Powell on Real Property ¶¶ 407-13 (abr. ed. 1968), as authority, our Supreme Court stated in Helms v. Tullis,398 So.2d 253, 255 (Ala. 1981), that several other possible methods of establishing easements have been recognized, including: (1) by express conveyance, (2) by reservation or exception, (3) by implication, (4) by necessity, (5) by contract, and (6) by reference to boundaries and maps. Most of these additional methods contemplate a grant and/or reservation by deed of an interest in the property upon which an easement is claimed; however, none of these additional methods are at issue in this case.
[6] We note that this is not a case involving an easement reserved to the grantor by implication. See, e.g., Polhemus v. Cobb, 653 So.2d 964,966-67 (Ala. 1995) (explaining that easements by implication require original unity of ownership and the elements of apparentness, continuity, and necessity such that the grantee, having seen the use the grantor made of the property, reasonably can expect a continuance of that use).