778 N.W.2d 485 (2009)
18 Neb. App. 19
The SALVATION ARMY, Appellant,
v.
James KYLE and Tina Kyle, husband and wife, and James Ewers, Appellees.
No. A-08-1190.
Court of Appeals of Nebraska.
September 15, 2009.
*487 Brian J. Adams, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellant.
Roger G. Steele, Grand Island, of Steele Law Office, for appellees James Kyle and Tina Kyle.
Randall L. Goyette and Cynthia R. Lamm, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellee James Ewers.
INBODY, Chief Judge, and CARLSON and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
The Salvation Army filed this action against James Kyle, Tina Kyle, and James Ewers in the district court for Adams County, seeking to recover damages related to the loss of the contents of a thrift store operated by the Salvation Army and the ultimate demolition of the thrift store building in connection with a fire that occurred in May 2004. The district court directed a verdict against the Salvation Army in connection with its claim for damages for the loss of its building and the cost to demolish the building. The jury returned a verdict in favor of the Salvation Army with respect to its damages for the loss of equipment and inventory contained within the building. The Salvation Army appeals the district court's entry of a directed verdict. Because we find that the district court erred in entering a directed verdict, we reverse, and remand for further proceedings.

BACKGROUND
On May 5, 2004, the date of the fire in question, the Salvation Army owned a two-story building in the city of Hastings, Nebraska (City), from which it operated a thrift store. The Kyles owned a three-story building located immediately to the west of the Salvation Army building; the Kyle building housed a retail antique store on the first floor and four residential apartments on the second floor. Two of the apartments in the Kyle building were occupied by tenants at the time of the fire. The Kyle building, built in 1898, and the Salvation Army building, built in 1900, shared a common wall, the west wall of the Salvation Army building.
Despite having two tenants residing in their building, the Kyles never installed fire sprinklers or operable smoke detectors as required by the Hastings City Code and the National Fire Protection Association's "Life Safety Code."
Ewers was the tenant occupying the southeast apartment in the Kyle building at the time of the fire. The Kyles allowed Ewers to live in the building rent free in exchange for his help in remodeling the *488 apartments. The Kyles also employed Ewers to perform various odd jobs. The evidence shows that Ewers smoked cigarettes and drank alcohol on a regular basis. The Kyles knew that Ewers smoked and that he did so in his apartment, but they did not take any steps to stop him from continuing this practice.
The fire began sometime in the early morning hours of May 5, 2004. According to an investigator with the State Fire Marshal's office, the fire originated in Ewers' apartment as a result of careless handling of smoking materials by whoever was occupying the apartment on that night. Ewers admitted to being intoxicated on the night of the fire. Because of the extent of damage by the fire, the City ordered that the remains of the Kyle building be demolished.
Although the shared wall between the Kyle building and the Salvation Army building suffered very little fire damage, the Salvation Army building and its contents suffered significant smoke, water, and mold damage because of the fire. The Salvation Army was unable to operate a thrift store at the location of its building at any time after the date of the fire.
On May 17, 2004, the City building inspector observed that the Salvation Army building had sustained damage, and the City ordered that the building be vacated and secured against entry. The City also ordered the Salvation Army to have its building evaluated by a competent structural engineer.
On June 9, 2004, James Belina, an investigative engineer, inspected the Salvation Army building, specifically its west wall, to determine whether it was structurally sound. At the time of Belina's inspection, the Kyle building had been demolished. After his investigation, Belina concluded that it probably was not economical to repair the west wall and that it should be torn down and replaced. Belina's inspection showed that when the Salvation Army building was constructed, holes had been made in the wall of the Kyle building and the roof joists for the Salvation Army building had been slid into the holes. Belina observed that the removal of the floor and roof systems of the Kyle building and its north and south walls left the west wall of the Salvation Army building without needed support. Belina also discovered that the Salvation Army building had experienced a fire at some time in the past and that "sister joists" had been placed on some of the burned floor joists, while other burned joists had not been repaired. Belina noted that the limestone foundation of the Salvation Army building was severely deteriorated due to loose and missing mortar, creating an unstable condition and the potential for total collapse. In his report, Belina concluded:
In summary, we believe that the condition of the wall was primarily due to demolition of the adjacent building, which had resulted in removal of important load-resisting components. The deterioration of the wall due to age was severe and had greatly affected its ability to withstand load.
Renovation and construction of additional support components for the wall would most likely be extremely expensive and would likely exceed the cost of demolition and rebuilding.
On October 6, 2004, the City building inspector observed conditions inside the Salvation Army building, noting that the interior was extremely humid, encouraging mold and mildew growth; that the floor joists on the first floor had sustained damage from a fire years before, which had not been repaired or replaced in certain areas, and that the floor was substantially weaker in those areas than prescribed by current building codes; that the interior surface *489 walls were growing mold and mildew; and that the interior air quality was poor, with a stench of mold and decay. On February 18, 2005, the building inspector observed that the west wall of the Salvation Army building was unrestrained, due to the absence of floor-ceiling framing on the west; that the west wall was exposed to the weather and had no weather-resistive covering; that the west wall had holes remaining from the floor framing which was recessed into the party wall; and that no repair or stabilization had been done to the building.
Based in part upon Belina's report, the City ordered the Salvation Army to demolish its building. The City also required the Salvation Army to ensure that the wall the Salvation Army building shared with its neighbor to the east would remain stable after completion of the demolition.
The Salvation Army eventually retained an excavating company to perform the demolition and stabilization work, which cost $204,150. Demolition had to be performed by hand because the demolition of the Kyle building had damaged and compromised the Salvation Army building's west wall.
The Salvation Army filed the operative complaint on November 2, 2007, seeking to recover the value associated with the loss of the building, the costs incurred in demolishing the building, the costs associated with replacing the inventory and equipment in the building destroyed because of the fire, and the profits the thrift store lost during the period in which it could do no business because of the fire. The Salvation Army alleged that Ewers had a duty to exercise reasonable care in conducting himself so as to not cause damage to the property of others and that he breached such duty by smoking in his apartment while intoxicated, failing to properly extinguish his cigarette, and/or storing large amounts of flammable materials in and around the Kyle building in the course of his employment by the Kyles. The Salvation Army alleged that the Kyles, as Ewers' employers, were responsible for any negligent acts committed by Ewers during the course of his employment. The Salvation Army further alleged that the Kyles had duties to exercise reasonable care in preventing Ewers, their tenant, from continuing to engage in negligent activities which they knew or should have known were reasonably likely to cause damage to the Salvation Army building and, as property owners, to exercise reasonable care in preventing a fire which originated on their premises from spreading to the Salvation Army building. The Salvation Army alleged that the Kyles breached these duties by (1) allowing Ewers to smoke in his apartment despite their knowledge of his tendency to do so while intoxicated, (2) allowing Ewers to store large amounts of flammable materials in and around the Kyle building, and (3) failing to equip their building with fire detection and suppression apparatus required by City and state codes.
A jury trial was held on October 8 through 10, 2008. At the close of the Salvation Army's case, the district court entered a directed verdict in favor of Ewers and the Kyles with respect to the Salvation Army's request for damages for the loss of its building and the cost of demolishing it and with respect to the allegations relating to Ewers' storage of flammable materials and the Kyles' vicarious liability for that storage of materials. With respect to the damages for the loss of the Salvation Army building and the cost to demolish it, the court found that those losses were not compensable, because the Kyles did not owe the Salvation Army a duty to provide any lateral support and because the Salvation Army did not plead *490 negligent demolition of the Kyle building. The issues of the Kyles' and Ewers' liability for and damages resulting from the Salvation Army's loss of equipment, inventory, and profits were allowed to go to the jury. The Kyles and Ewers rested without presenting further evidence. The jury returned a verdict in favor of the Salvation Army, finding the Kyles to be 85-percent negligent and Ewers to be 15-percent negligent and awarding $19,529 in damages. The Salvation Army subsequently perfected its appeal to this court.

ASSIGNMENT OF ERROR
The Salvation Army asserts that the district court erred in finding as a matter of law that the Salvation Army could not recover damages for the loss of its building or the cost to demolish the building on its claim against either the Kyles or Ewers.

STANDARD OF REVIEW
In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. State of Florida v. Countrywide Truck Ins. Agency, 275 Neb. 842, 749 N.W.2d 894 (2008). A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. Lacey v. State, 278 Neb. 87, 768 N.W.2d 132 (2009).

ANALYSIS
In granting the motion for directed verdict, the district court relied upon Bowhay v. Richards, 81 Neb. 764, 116 N.W. 677 (1908), and First Investment Co. v. State Fire Marshal, 175 Neb. 66, 120 N.W.2d 549 (1963).
In Bowhay, the rights of the original adjoining landowners with respect to a party wall were governed by a written contract, but the contract was never recorded. Both buildings were subsequently destroyed by fire, but a portion of the party wall was left standing. After the fire, the adjoining properties were purchased by new landowners. The plaintiff constructed a new building on his property and, in doing so, rebuilt and used the former party wall. After completion of this building, the defendant, who had purchased the adjoining lot, began construction of a new building on his property and attempted to use the former party wall for support of the ceiling and roof joists of his building. The plaintiff then filed suit, seeking to enjoin the defendant from doing so. On appeal, the Nebraska Supreme Court agreed with the plaintiff's allegation that any easement in the party wall terminated upon destruction of the original buildings by fire, stating that where a wall is entirely upon the property of one party, the right of an adjoining owner to have support therefrom, whether derived from contract or acquired by prescription, is in the nature of an easement, which is terminated upon the destruction of the building by fire. Bowhay v. Richards, supra. The court went on to conclude that the fact that the owner of a building used a wall upon the land of an adjoining proprietor for the support of his building before the same was destroyed by fire is not such notice as charges a purchaser of the property upon which the wall is situated with knowledge of a stipulation in an unrecorded written contract that the owner of such building might renew the use of such wall *491 in case it should be destroyed and rebuilt. Id.
First Investment Co. v. State Fire Marshal, supra, was a condemnation action brought against a company to condemn a portion of a building owned by the company. In 1914, the property upon which the building sat was divided by deed and remained so at the time of the condemnation action, the two halves of the building being owned by different owners and divided by a party wall. At the time of the condemnation action, the portion of the building owned by the company had become dilapidated through failure to repair and the erosion of time such that it could no longer be used for its intended purpose. The adjoining owners opposed the demolition of the portion of the building owned by the company, alleging that because of the absence of a supporting wall, the demolition would cause irreparable damage to the portion of the building they owned. Accordingly, the adjoining owners sought an order requiring the construction of a proper supporting wall at the company's cost. The trial court, among other things, ordered the company in demolishing its portion of the building to not disturb the wall then existing between the properties and to build and pay for half the costs of a new tile wall extension.
On appeal, the company alleged that absent agreement between the owners of a divided building, the owner of one part had no obligation to repair or improve his part for the benefit of the other owner or to extend an existing wall unless he was using the extension. The Nebraska Supreme Court determined that an implied easement in the party wall had arisen when the premises was divided and conveyed to separate owners; the court then sought to determine the duration of the implied easement under the facts of the case. The court stated:
Suppose, for the purpose of discussion, although the record does not support it, the [c]ompany, which acquired its interest in 1959, and its predecessors in interest, could be charged with willfull neglect to repair its portion of the building. To answer this supposition, it should first be conceded that there is an obligation on each owner to use his own property so as not to injure his neighbor. However, can it be maintained from this obligation that the right of support and shelter to which each is entitled, and which may not be taken away by the wrongful act of the other owner, imposes also the affirmative duty to repair the premises and to maintain the existing condition of things? Unless this is so, the judgment of the trial court herein cannot be sustained. There is no question that if a contract right were involved, one owner would not be permitted to defeat an easement by his failure to repair. [Citation omitted.] This, however, is not the present situation because we are concerned not with a contract right but with an implied easement.
First Investment Co. v. State Fire Marshal, 175 Neb. 66, 72-73, 120 N.W.2d 549, 554 (1963) (emphasis supplied).
The court observed:
Generally, the easement of support of adjoining buildings by the party wall ordinarily ceases when the wall ceases to exist, or is accidentally destroyed, or has been made unfit for its purpose by accident or age, or has become so decayed as to require rebuilding from the foundation. Similarly, when the buildings are accidentally destroyed, the easement ceases.
Id. at 73, 120 N.W.2d at 554. The court went on to note its holding in Bowhay v. Richards, 81 Neb. 764, 116 N.W. 677 (1908), that an easement for support in a *492 party wall is terminated upon destruction of the building by fire, stating specifically that "[t]his is the general rule where the destruction is by accident or casualty." 175 Neb. at 73, 120 N.W.2d at 554 (emphasis supplied).
In answering the question of whether the company had any duty to preserve its building for the protection of the party wall, the Nebraska Supreme Court concluded that the owners of a party wall do not have a reciprocal easement of support from each other's building, but either of them may remove his own building without liability for the resulting damage to the other, providing he gives proper notice of removal and uses reasonable care and caution to protect the wall and remaining building. First Investment Co. v. State Fire Marshal, supra. The court stated that in the case where the action was brought "by the State Fire Marshal for the protection and welfare of society, there should be no question about the right to remove without liability." Id. at 78, 120 N.W.2d at 557.
Finally, the court addressed the fact that the portion of the building owned by the company could not be wholly removed without damage to the remaining portion of the building, noting the fact that the party wall was an interior wall and not intended to protect against wind and weather, making future damage probable absent the provision of an exterior wall. The court noted that construction of the tile wall sought by the adjoining owners was solely for the benefit of the adjoining owners and could find no legal reason why the company should be required to contribute to the cost of the tile wall's construction. Accordingly, the court determined that the removal of a part of a building pursuant to an order of condemnation creates no obligation on the part of the owner of the part of the building removed to provide future protection for an interior division wall which then becomes an exterior wall for the portion of the building remaining. First Investment Co. v. State Fire Marshal, supra.
The present case is distinguishable from Bowhay and State Fire Marshal in several respects. Those cases were premised upon theories of contract law, easements, and the right to support from a common wall. In the present case, the Salvation Army does not allege any contractual duty, easement, or breach of a duty by the Kyles to provide lateral support or protection as a result of the common wall. Rather, the Salvation Army's case against the Kyles is premised upon the Kyles' negligence in allowing a tenant to smoke in the apartment and to store flammable materials in the building, as well as the Kyles' failure to properly equip the building with fire detection and suppression apparatus. Thus, the general rule stated above in State Fire Marshal regarding the termination of an easement in a party wall upon the destruction of a building by fire does not apply in the present case.
We agree with the Salvation Army that the issue relating to the damages for the destruction and loss of its building is one of proximate cause which should have been submitted to the jury. In other words, whether the Salvation Army's damages relating to the demolition and loss of its building were proximately caused by the breach of the same duties that allowed recovery against the Kyles and Ewers for the loss of the contents of the Salvation Army building is a question of fact. We also note that the directed verdict entered by the district court ignores the fact that the loss of support was not the sole reason for the demolition of the Salvation Army building. The record shows that the conditions cited by the City leading to the order of demolition of the Salvation Army *493 building included the extremely humid interior of the building, which encouraged mold and mildew growth; the weakened condition of the floor, due to damage from a previous fire; the growth of mold and mildew on the interior surface walls; the poor interior air quality, with a stench of mold and decay; the unrestrained west wall of the Salvation Army building, due to the absence of floor-ceiling framing; the west wall's lack of a weather-resistive covering; and lack of repair or stabilization to the building.
In 1 Am.Jur.2d Adjoining Landowners § 12 at 937-38 (2005), it is stated that
[t]he principles of the law of negligence ordinarily enter into the determination of the question of the reasonable use of property. A private owner is liable for damages inflicted by the owner's negligence in connection with his or her property, though the injury is inflicted outside and beyond the limits of his or her property.
The proper test of liability of a possessor of land is whether in the management of his or her property he or she has acted as a reasonable person in view of the probability of injury to others. A landowner who engages in activities that may cause injury to persons on adjoining premises owes those persons a duty to take reasonable precautions to avoid injuring them. Indeed, a landowner owes adjoining landowners the duty to take such precautions and use such means to lessen the danger to adjoining property as would a person of ordinary prudence. Liability thus may be imposed on an adjoining landowner or lessee if that individual creates a dangerous condition.
The fact that a building has been damaged or was imperfectly constructed or has been condemned does not affect the adjoining owner's liability for additional damage thereto by his or her negligence. Where a dangerous condition on a person's property causes injury to the adjoining owner due to failure of the former to fulfil his or her duty to correct the danger, a recovery of damages based on negligence will lie. Further, in applying the law of negligence, if an abutting property owner causes a defect on adjoining property, he or she may be held responsible.
It is a general principle that in the absence of negligence there is no liability if there was a legitimate and reasonable use. Whether there was negligence is generally a jury question.
In Nebraska, a landowner has a duty to use his property so as to not unnecessarily and negligently injure his neighbor. Schomberg v. Kuther, 153 Neb. 413, 45 N.W.2d 129 (1950); Lincoln & B.H.R. Co. v. Sutherland, 44 Neb. 526, 62 N.W. 859 (1895).
It has been held that "[s]moke [damage] and water damage to adjacent property are foreseeable consequences of a fire, and plaintiff may recover for such damage[s] if he establishes defendants' breach of duty and proximate cause." Cuevas v. Quandt's Foodservice Distributors, 6 A.D.3d 973, 974, 775 N.Y.S.2d 429, 430 (2004). See, also, Excelsior Ins. Co. v. Auburn Local Development Corp., 294 A.D.2d 861, 741 N.Y.S.2d 632 (2002); Fontana Fabrics, Inc. v. Hodge, 187 A.D.2d 378, 589 N.Y.S.2d 488 (1992).
We conclude that reasonable minds could differ and that more than one conclusion could be drawn as to whether the damages relating to the demolition and loss of the Salvation Army building were proximately caused by the Kyles' and Ewers' negligence. Accordingly, entry of a directed verdict was improper.

*494 CONCLUSION
The district court erred in entering a directed verdict on the issue of the Salvation Army's damages relating to the demolition and loss of its building.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.